2023-1526

# United States Court of Appeals for the Federal Circuit

CELLSPIN SOFT, INC.,

Plaintiff-Appellant,

v.

FITBIT LLC; NIKON AMERICAS, INC.; and NIKON, INC.,

Defendants-Appellees.

*Appeal from the United States District Court for the Northern District of California in case nos. 4:17-cv-05928-YGR and 4:17-cv-05936-YGR Judge Yvonne Gonzalez Rogers*

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

April 24, 2023

*/s/ Randall Garteiser*
Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548

**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Attorneys for Plaintiff-Appellant*
CELLSPIN SOFT, INC.

# CERTIFICATE OF INTEREST

The undersigned counsel for the Plaintiff-Appellant certifies the following, pursuant to Federal Circuit Rule 47.4:

(i) The full name of every entity represented by me in this case is:

Cellspin Soft, Inc.

(ii) The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

(iii) All parent corporations and any publicly held companies that own 10 percent or more of the stock of the entity represented by me are:

N/A

(iv) The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court, are:

**COLLINS EDMONDS & SCHLATHER, PLLC**
John J. Edmonds
Shea N. Palavan
Brandon G. Moore

(v) Other than the originating case number(s), the title and number of any cases known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

*Cellspin Soft, Inc. v. Fitbit, Inc.*
Federal Circuit Appeal 2022-2025

*Cellspin Soft, Inc. v. Nike Inc.*
Federal Circuit Appeal 2022-2028

*Cellspin Soft, Inc. v. Under Armour, Inc.*
Federal Circuit Appeal 2022-2029

*Cellspin Soft, Inc. v. Fossil Group, Inc.*
Federal Circuit Appeal 2022-2030

*Cellspin Soft, Inc. v. Nikon Americas, Inc.*
Federal Circuit Appeal 2022-2032

*Cellspin Soft, Inc. v. Garmin, Int'l, Inc.*
Federal Circuit Appeal 2022-2037

Date: April 24, 2023

*<u>/s/ Randall Garteiser</u>*
Randall Garteiser

# TABLE OF CONTENTS

**I. STATEMENT OF RELATED CASES ........ 1**

**II. STATEMENT OF JURISDICTION ........ 2**

**III. STATEMENT OF THE ISSUES ........ 3**

**IV. STATEMENT OF THE CASE AND FACTS ........ 4**

A. THE PRIOR APPEAL, REMAND, AND SUBSEQUENT DISTRICT COURT PROCEEDINGS ........ 4

B. FACTS IN THE DISTRICT COURT. ........ 6

C. THE DISTRICT COURT HAS ADMITTED THESE FACTS. ........ 9

**V. SUMMARY OF THE ARGUMENT. ........ 11**

**VI. ARGUMENT ........ 13**

A. LEGAL PRINCIPLES AND STANDARD OF REVIEW ........ 13

B. THE MOTION FOR RECUSAL. ........ 16

C. THE BACKGROUND AND TIMING. ........ 18

D. GOOGLE FUNDING OF AJAX STRATEGIES STARTUPS AND PARTNERSHIPS REQUIRES RECUSAL AND VACATUR. ........ 20

E. FEDERAL JUDGES HAVE NO 28 U.S.C. § 455(D) EXCEPTION FOR INVESTING $5–$25 MILLION IN A HEDGE FUND. ........ 32

F. NO 28 U.S.C. § 455(D) EXCEPTION FOR INVESTING $10–$43 MILLION IN AN INDEX FUND. ........ 40

G. GOOGLE WAS MATT ROGERS' PRIMARY TECHNOLOGY PARTNER AT MCKINSEY ........ 50

**VII. JUDGE GONZALEZ ROGERS' VIOLATION OF SECTIONS 455(A), (B) AND (C) WAS NOT HARMLESS ERROR. ........ 56**

**VIII. RECUSAL IS APPROPRIATE FOR ALL DEFENDANTS AND VACATUR SHOULD PROPERLY FOLLOW. ........ 58**

**IX. CONCLUSION AND PRAYER FOR RELIEF ........ 60**

# TABLE OF AUTHORITIES

## CASES

*Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306 (Fed. Cir. 2019) .......... 4
*Chase Manhattan Bank v. Affiliated FM Ins. Co*., 343 F.3d 120, 127 (2d Cir. 2003) . 15
*In re Murchison*, 349 U.S. 133, 136 (1955) .......... 15
*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 862 (1988) .......... 56, 57
*Liteky v. United States*, 510 U.S. 540, 548 (1994) .......... 15, 16, 17
*Offutt v. United States*, 348 U.S. 11, 14 (1954) .......... 15
*Shell Oil Co. v. United States*, 672 F.3d 1283, 1288 (Fed. Cir. 2012) .......... 17, 57, 58
*United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) .......... passim
*United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) .......... 13
*United States v. Microsoft Corp*., 253 F.3d 34, 115 (D.C. Cir. 2001) .......... 15
*United States v. Mitchell*, 886 F.2d 667, 671 (4th Cir. 1989) .......... 17
*United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000) .......... 16
*Williamson v. Ind. Univ.,* 345 F.3d 459, 464–65 (7th Cir. 2003) .......... 57

## STATUTES

18 U.S.C. § 208 .......... 33
28 U.S.C. § 1295(a)(1) .......... 2
28 U.S.C. § 1331 .......... 2
28 U.S.C. § 1338(a) .......... 2
28 U.S.C. § 1400 .......... 2
28 U.S.C. § 2107 .......... 2
28 U.S.C. § 455 .......... 3, 9, 17, 18
28 U.S.C. § 455(a) .......... 15
28 U.S.C. § 455(a)–(d) .......... passim
28 U.S.C. § 455(b) .......... 16, 48
28 U.S.C. § 455(b)(4) .......... 16
28 U.S.C. § 455(c) .......... 58
28 U.S.C. § 455(d) .......... passim
28 U.S.C. § 455(f) .......... 15, 16, 56
35 U.S.C. § 101 .......... 4, 5
35 U.S.C. § 102 .......... 5
35 U.S.C. § 103 .......... 5

## RULES

Fed. R. App. P. 4 .......... 2
Fed.Cir.R. 4 .......... 2
Fed.R.App.P. 4(a)(1)(A) .......... 2

## I. STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Plaintiff-Appellant, Cellspin Soft, Inc. ("Cellspin"), hereby states that the civil cases underlying these consolidated appeals were previously appealed to this Court, as follows:

(i) The title and number of the earlier appeals were: *Cellspin Soft, Inc. v. Fitbit, Inc.; Moov, Inc. d/b/a Moov Fitness, Inc.; Nike, Inc.; Fossil Group, Inc.; Misfit, Inc.; Garmin International, Inc.; Garmin USA, Inc.; Canon USA, Inc.; GoPro, Inc.; Panasonic Corporation of North America; and JK Imaging Ltd.,* Appeals Nos. 2018-1817, 2018-1819, 2018-1820, 2018-1821, 2018-1822, 2018-1823, 2018-1824, 2018-1825, and 2018-1826.

(ii) The date of the earlier decision was: June 25, 2019.

(iii) The composition of the earlier panel was: Lourie, O'Malley, and Taranto.

(iv) The citation of the earlier opinion in the Federal Reporter is:

927 F.3d 1306 (Fed. Cir. 2019).

Pursuant to Federal Circuit Rule 47.5(b), counsel for Cellspin further states that it is aware of the following cases pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Cellspin Soft, Inc. v. Fitbit, Inc.*
Federal Circuit Appeal 2022-2025

*Cellspin Soft, Inc. v. Nike Inc.*
Federal Circuit Appeal 2022-2028

*Cellspin Soft, Inc. v. Under Armour, Inc.*
Federal Circuit Appeal 2022-2029

*Cellspin Soft, Inc. v. Fossil Group, Inc.*
Federal Circuit Appeal 2022-2030

*Cellspin Soft, Inc. v. Nikon Americas, Inc.*
Federal Circuit Appeal 2022-2032

*Cellspin Soft, Inc. v. Garmin, Int'l, Inc.*
Federal Circuit Appeal 2022-2037

## II. STATEMENT OF JURISDICTION

Cellspin brings this Appeal from the District Court, including in accordance with Title 28 U.S.C. § 1295(a)(1). Fed.R.App.P. 4(a)(1)(A). This action arose under the United States Patent Laws and jurisdiction, including in accordance with, and pursuant to, 28 U.S.C. §§ 1331, 1338(a) and 1400(b).

The appealed order is final because appealable orders amounting to final judgment were entered on June 15, 2022, and the specific appealed order was entered February 15, 2023. Cellspin timely filed Notices of Appeal on February 17, 2023, within thirty days of entry of the denial of recusal motion in accordance with 28 U.S.C. § 2107(a), Fed.R.App.P. 4(a)(1)(A), and Fed.Cir.R. 4.

## III. STATEMENT OF THE ISSUES

1. Whether pursuant to 28 U.S.C. § 455, District Court Judge Gonzalez Rogers failed to recuse herself based on the objective appearance that "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned"?

2. Whether the District Court improperly shifted the burden of recusal to the moving party?

3. Whether the District Court erred in failing to find that an objective person would conclude that the District Court Judge's impartiality might reasonably be questioned in view of the role of the Judge's spouse as operating partner with Ajax Strategies?

4. Whether the District Court erred in failing to find that an objective person would conclude that the District Court Judge's impartiality might reasonably be questioned in view of the role of the Judge's spouse as technology partner with McKinsey and Google?

5. Whether the District Court erred in finding that index funds as owned by the District Court Judge are exempt under 28 U.S.C. § 455(d)?

6. Whether the District Court erred in failing to find that the mis-identification of funds in an annual disclosure by the District Court Judge warrants recusal

because it thwarts the ability of the public to assess potential judicial conflicts?

7. Whether the District Court erred in finding that hedge fund as owned by the District Court Judge are exempt under 28 U.S.C. § 455) (d)?

8. Whether the District Court Judge erred in failing to recuse herself when defendant Fitbit was publicly purchased by Google/Alphabet at a time when the District Court Judge owned a substantial stake in an index fund that publicly disclosed ownership in Google stock?

9. Whether the District Court Judge erred in failing to recuse herself when the spouse of the District Court Judge was on the board of directors of a startup funded by Google?

## IV. STATEMENT OF THE CASE AND FACTS.

### A. THE PRIOR APPEAL, REMAND, AND SUBSEQUENT DISTRICT COURT PROCEEDINGS.

This case was previously consolidated for appeal to this Court following the District Court's earlier erroneous Orders invalidating all Asserted Claims under 35 U.S.C. § 101 at the pleading stage. At that time, Judge Gonzalez Rogers also granted Section 285 against Cellspin in all of those cases consolidated on appeal. This Court reversed and remanded the District Court's Orders at *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306 (Fed. Cir. 2019).

Upon remand and fact discovery, the District Court denied Defendants' Motion for Summary Judgment again seeking to invalidate the Asserted Claims under 35 U.S.C. § 101, and construed the claims as a matter of law. The parties then proceeded through full discovery, including expert discovery and expert reports.

At the close of all discovery, the District Court allowed Defendants to file new and independent summary judgment motions (in addition to Defendants' earlier collective § 101 Motion for Summary Judgment). Notably, none of the Defendants moved for summary judgment attacking the validity of the Asserted Claims under either 35 U.S.C. §§ 102 or 103; instead, each Defendant moved for summary judgment based on independent individualized arguments of alleged non-infringement. The District Court granted Defendants' Motions in an omnibus Order dated June 7, 2022. That omnibus Order is the subject of pending consolidated appeals to this Court at: 2022-2025; 2022-2028; 2022-2029; 2022-2030; 2022-2032; and 2022-2037.

Subsequent to the docketing of the co-pending consolidated appeals, Cellspin became aware of numerous facts which reasonably call into question the impartiality of the District Court Judge in the underlying matters. Those facts were promptly presented to the District Court via Cellspin's Motion for Recusal under 28 U.S.C. § 455(a)–(d), which was filed in the District Court on January 20, 2023.

The District Court denied Cellspin's Motion by way of its written opinion dated February 15, 2023. That Opinion, as will be shown herein, is clearly erroneous. Cellspin immediately filed its Notice of Appeal on February 17, 2023.

## B. FACTS IN THE DISTRICT COURT.

Below are the publicly available facts as offered by Cellspin in its Motion for Recusal, the purported facts as offered (often without any evidentiary support whatsoever) by the District Court in its erroneous Order, and facts not denied by Defendants:

1. District Court Judge Gonzalez Rogers' husband (Matt Rogers) is an *operating partner* at Ajax Strategies, which is a Venture Capital Firm in San Francisco. (Appx0030-0031, Appx0100-0101, Appx0892-0893, Appx0935).

2. Google has invested with others combined total of ***$700 Million*** dollars in Matt Rogers' Ajax Strategies Portfolio companies. (Appx2141).

3. Matt Rogers' portfolio company "Planet" is funded by Google and is completely reliant upon Google's platform for its existence. (Appx0031-0032, Appx0140-0141). Google has NOT denied this fact. (Appx1101-1117).

**Satellite imagery company Planet goes public, with $300 million 'war chest' aft...**

Closing its merger nets Planet more than $590 million in gross proceeds, with capital from dMY as well as a PIPE round – or private investment in public equity – led by BlackRock and joined by Google, Koch, and Marc Benioff's TIME Ventures. After SPAC transaction fees and paying off debt, Johnson said Planet will have more than $500 million on its balance sheet.

*Figure 1 – Excerpt from Exhibit 8 (Appx0140-0141) as cited at Appx0031-0032.*

4. Matt Rogers' portfolio company hydropower startup "Natel Energy" is funded by Google. (Appx0032, Appx0172-0174, Appx2140-2141). Google has NOT denied this fact. (Appx1101-1117).

5. Matt Rogers' portfolio company start-up "Ripple Food" is funded by Google. (Appx0032, Appx0178, Appx2140). Google has NOT denied this fact. (Appx1101-1117).



**Fundings-in-Brief: Ripple Foods Raises $30m from Google, Khosla, S2G, Tao, Soil Disease Testing Kit Raises $4m, more**

July 14, 2016 Lauren Manning

**Ripple Foods Raises $30m from Google Ventures, Khosla, S2G, Tao Capital**

Ripple Foods, which makes non-dairy milk products with eight times the protein as almond milk and half the sugar of dairy milk, has closed a $30 million Series B round led by GV, Google's venture investment arm.

*Figure 2 – Excerpt from Exhibit 11 (Appx0178).*

6. Matt Rogers' portfolio company "Lime" has an ongoing strategic partnership with Google. (Appx0033, Appx1010-1012, Appx2140). Google has NOT denied this fact. (Appx1101-1117).

7. Matt Rogers' portfolio company "Voltus" has an ongoing business partnership with Google. (Appx0033, Appx0197-0199, Appx2140). Google has NOT denied this fact. (Appx1101-1117).

8. Matt Rogers' portfolio company "StreetLight Data" has an ongoing business partnership with Google. (Appx0033-0034, Appx1023, Appx2140). Google has NOT denied this fact. (Appx1101-1117).

9. Matt Rogers' portfolio company "Descartes Labs" has an ongoing customer partnership with Google. (Appx0034, Appx1031-1035, Appx2140). Google has NOT denied this fact. (Appx1101-1117).

10. Matt Rogers' portfolio company "Regrow" has an ongoing business partnership with Google. (Appx0034-0035, Appx1051-1055, Appx2140). Google has NOT denied this fact. (Appx1101-1117).

11. Google failed to provide a declaration that it does not have any financial interest/relationship with any of the eight Matt Rogers Ajax Strategies companies. (Appx2140).

12. District Court Judge Gonzalez Rogers' husband (Matt Rogers) was a senior partner at McKinsey for more than ten (10) years for its Oil and Gas clients. (Appx0100-0101).

13. Matt Rogers' company "McKinsey" has an ongoing business partnership and alliance with Google. (Appx0026–0028, Appx0910-0911, Appx0919, Appx0930–0932, Appx2140). Google has NOT denied this fact. (Appx1101-1117).

14. As an oil, gas, and energy senior partner at McKinsey, Matt Rogers sells Google services to his oil gas and energy clients. (Appx0107-0108, Appx0112-0113). Google has NOT denied this fact. (Appx1101-1117).

15. District Court Judge Gonzalez Rogers has at least a **$9.4 Million** and as much as a **$43 Million** investment in the Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund. (Appx0036, Appx0238, Appx1641).

16. District Court Judge Gonzalez Rogers has at least a **$5 Million** and as much as a **$25 Million** opaque investment in the "McKinsey & Company Special Situations Aggressive Long-Term" fund. (Appx0044, Appx2160, Appx1642).

## C. THE DISTRICT COURT HAS ADMITTED THESE FACTS.

In its erroneous Order, the District Court ignored the well-established §) 455 standard and, applying a burden under § 144 to Cellspin, the District Court Judge made at least the following admissions:

1. "[I]t is true that the undersigned's husband [Matt Rogers] has been an Operations Partner at Ajax since April 2022." (Appx0012 at 12:12-13).

2. The "[U]ndersigned's husband [Matt Rogers] is a contractor for Ajax." (Appx0012 at 12:15).

3. "[H]e [Matt Rogers] represents Ajax's interests." (Appx0012 at 12:16).

4. He [Matt Rogers] is "serving on the board of Natel," an Ajax Strategies company. (Appx0012 at 12:16-17).

5. He [Matt Rogers] is "a board advisor to another company" Ojjo, another Ajax Strategies portfolio company. (Appx0012 at 12:17).

6. "Planet Labs . . . is one of …customers of Natel." (Appx0012 at 12:20).

7. Natel, Ojjo and Planet Labs are Ajax portfolio companies. (Appx0012).

8. Matt Rogers was a senior partner at McKinsey until August 2021; and the "Court clarifies that the undersigned's husband [Matt Rogers] has not been a Senior Partner at McKinsey since July 31, 2021." (Appx0011 at 11:2-3).

9. District Court Judge Gonzalez Rogers has substantial investments in the Vanguard 500 Index Fund and the Vanguard Total International Stock Index Fund. (Appx0014).

10. District Court Judge Gonzalez Rogers' $5-25 Million dollar investment holding by the name of "McKinsey & Company Special Situations Aggressive Long-Term" in her financial disclosures forms for 2020 is not the actual name of

the investment. Instead, the actual name is the McKinsey Investment Officers ("MIO"), and the MIO hedge fund is named *"Special Situation Fund."* (Appx0017-0018).

## V. SUMMARY OF THE ARGUMENT.

The District Court's denial of Cellspin's Motion for Recusal is an abuse of discretion and, as such, the Order must be reversed. Pursuant to 28 U.S.C. §§ 455(a), (b), (c), and (d), Plaintiff Cellspin moved for an Order Recusing the Honorable Yvonne Gonzalez Rogers from the Fitbit (Google) litigation, as well as each of the related cases. As a result of § 455 violations, Plaintiff Cellspin moved to vacate entry of the joint Summary Judgement Order in favor of all Defendants and all subsequent orders thereto. In February 2021, it was reported to the District Court in a Rule 7.1 disclosure that Google had acquired all of Fitbit, Inc., a defendant in this litigation. At that time, the District Court failed to recuse, despite its first-hand and full knowledge of the numerous apparent conflicts of interest.

In its briefing to the District Court, Cellspin presented four specific reasons, each with substantial publicly available evidence, in support of Recusal. Those four specific reasons were:

1. District Court Judge Gonzalez Rogers' husband has a financial interest in his employment as "Operating Partner" at Ajax Strategies Venture Capital firm and

has substantial business ties with Google, given the facts that Ajax Strategies has taken substantial Google funding to operate three start-ups and has strategic partnerships with Google for five of their other startups.

2. District Court Judge Gonzalez Rogers has investments of anywhere between $9.4 Million–$43 Million in S&P Index funds via Vanguard, and it is commonly known that Google (Alphabet), Apple, Microsoft, Amazon and Facebook make up 17.5% of the S&P. So, just as the placement of Cisco stock in a blind trust was not divestiture under Section 455(f) in *Centripetal Networks v. Cisco,* 38 F.4th 1025, 1030-33 (Fed. Cir. 2022), the placement of substantial money here into an Index Fund literally ensures a direct and *known* financial interest in Big Tech, including Defendant Alphabet (Google) (not to mention Nike and its Apple Watch, and Garmin).

3. Judge Gonzalez Rogers' <u>opaque</u> investment holding of "McKinsey & Company Special Situations Aggressive Long-Term" of anywhere between $5 Million–$25 Million is not a mutual fund or a common investment fund, and the public does not know any details about this investment. Nor could the public, as Judge Gonzalez Rogers provided the wrong name of the investment in her disclosures. Neither Cellspin nor the public could know anything about the non-disclosed investment. Only in the District Court's Order is the actual name of the hedge fund disclosed, and that alone is reason for recusal.

4. District Court Judge Gonzalez Rogers' husband has a financial interest in Google through his employment at McKinsey. Matt Rogers sold Google Cloud services to his oil, gas, and energy clients and part of his pay and bonus is dependent on his client's satisfaction and success through the use of Google services.

The evidence Cellspin relied on comprised of, *inter alia*, Judge Rogers' own financial disclosures, Judge Rogers' husband Matt Rogers' LinkedIn profile, corporate press releases, news articles, corporate blog posts, McKinsey website web-pages, Ajax Strategies website web-pages, industry articles, and more. Under these facts, recusal is warranted and required under §§ 455(a)-(d). Again, the statute provides, in relevant part: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

## VI. ARGUMENT

### A. LEGAL PRINCIPLES AND STANDARD OF REVIEW

This Court applies the law of the regional circuit when reviewing a district court's denial of a motion for recusal. The Ninth Circuit reviews district court's denial of a motion for recusal for abuse of discretion. *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012); *see also Shell Oil Co. v. United States*, 672 F.3d

1283, 1288 (Fed. Cir. 2012). The statute governing recusal of federal judges is 28 U.S.C. § 455, which provides, in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which *his impartiality might reasonably be questioned*.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (4) *He knows that he*, individually or as a fiduciary, or his spouse or minor child residing in his household, *has a financial interest* in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.
>
> (d) For the purposes of this section the following words or phrases shall have the meaning indicated:
>
> > (4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:
> >
> > > (i) *Ownership in a mutual or common investment fund* that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;
>
> (f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned *would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance* or discovery, after the matter was assigned to him or her, that he or *she individually or as a fiduciary, or his or her spouse.*

*See* 28 U.S.C. § 455 (emphasis added).

Again, a district court judge "**shall** disqualify himself in any proceeding in which his impartiality might **reasonably be questioned**." 28 U.S.C. § 455(a) (emphasis added). "To determine under Section 455(a) whether a district judge should be removed for possible bias or prejudice, the court should 'ask whether a reasonable person with knowledge of all the facts would conclude that the judge's

impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). Further, "federal judges must maintain the appearance of impartiality" because "[d]eference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges." *United States v. Microsoft Corp*., 253 F.3d 34, 115 (D.C. Cir. 2001) (quoting Code of Conduct Canon 1 cmt.). Under § 455(a), impartiality must be "evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954))). Of course, "disqualification under §) 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

There exists a very clear and obvious "bright-line rule that a federal judge is disqualified based on a known financial interest in a party." *Chase Manhattan Bank v. Affiliated FM Ins. Co*., 343 F.3d 120, 127 (2d Cir. 2003). "Section 455(f) stands as the only exception." *Centripetal Networks, Inc. Cisco Sys., Inc.*, 38 F.4th 1025, 1030 (Fed. Cir. 2022). "What must be 'divested' under § 455(f) is the

financial interest giving rise to the disqualification." *Id.* at 1032. "The statute defines 'financial interest' as 'ownership of a legal or equitable interest, however small.'" *Id*. (citing § 455(d) (4)). "Thus, it logically follows that to 'divest' oneself of 'ownership' of a legal or equitable interest is possible only if one is 'deprived or dispossesse[d]' of ownership—something that is possible only if the interest is sold or given away." *Centripetal,* 38 F.4th at 1032 (emphasis added). "Also telling is Congress's use of the present tense in § 455(b)(4), providing that a judge should not sit when he or she 'has a financial interest' in a party. That verb usage suggests that selling or donating the stock is the only cure envisioned under § 455(f)." *Centripetal,* 38 F.4th at 1032 (emphasis added).

Title 28 U.S.C. § 455(b) requires that a judge disqualify herself in certain circumstances in which her impartiality might be reasonably questioned. The provision is self-enforcing on the part of the judge. *See United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000). Simply put, **"[w]hat matters is not the reality of bias or prejudice but its appearance**." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (explaining perception is reality when judicial ethics are at issue).

## B. THE MOTION FOR RECUSAL.

An Article III Judge is appointed for life. It is prestigious position. Any perception of bias is not allowed. The United States Supreme Court has said that:

"What matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphasis added). Recently, Congress and Chief Judge Roberts have emphasized the need for transparency in the financial holdings of the judiciary in order to avoid any perceptions of bias. In these circumstances, of course, "perception is reality." When Congress enacted § 455, its purpose was to avoid the perception of bias so that citizens do not lose respect and trust in the judiciary as a system. We simply cannot allow the judiciary to be partial, which is why § 455 is so important; public faith must be preserved at all costs, and even the perception of bias must be eliminated.

Cellspin filed its Motion for Recusal, asking District Court Judge Gonzalez Rogers recuse herself under § 455, and more specifically under §§ 455(a), (b)(4), (c), and (d)(4). Cellspin directed the District Court to the publicly available facts related to Judge Gonzalez Rogers' and her husband's financial interests in Google. The evidence of record showed that "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

This court reviews a district court's denial of a motion for recusal for abuse of discretion. *See United States v. Mitchell*, 886 F.2d 667, 671 (4th Cir. 1989); *Shell Oil Co. v. United States*, 672 F.3d 1283, 1288 (Fed. Cir. 2012).

## C. THE BACKGROUND AND TIMING.

District Court Judge Gonzalez Rogers did not deny Cellspin's Motion for Recusal based on timing. (Appx0009 at 9:20). The motion presented facts proving beyond a reasonable doubt that there is a public perception of bias requiring the recusal of District Court Judge Gonzalez Rogers under § 455 and, more specifically, under §§ 455 (a), (b)(4), (c), and (d)(4). Moreover, unlike Section 144, timing is not dispositive of a Section 455 motion.

Before Cellspin filed its Recusal Motion, it did **not** have access to all the factual information on which the motion was based. For example, Cellspin had no way of knowing in February of 2021 (the approximate timeframe of Google's acquisition of Fitbit) that Matt Rogers would be an *operating partner* at Ajax Strategies Venture Capital firm in April 2022 and would be operating three (3) Google funded startups and operating five (5) companies that have partnerships with Google. Similarly, Cellspin would have no way of knowing in February of 2021 or in February of 2022 if Judge Gonzalez Rogers had sold or still held her substantial 2020 Vanguard Index Fund investments, and Judge Gonzalez Rogers has not filed any financial disclosures for 2021 or 2022.

Instead of having a panel of her peers rule on the Recusal Motion, Judge Gonzalez Rogers ruled on her own recusal, which yielded the predictable result of a purported lack of bias. But in the process, Judge Gonzalez Rogers actually laid out the problem – her bias – against Cellspin and in favor of Google.

Under the circumstances, Judge Gonzalez Rogers should have informed *all parties* when her husband joined Venture Capital firm Ajax Strategies in April 2022. The fact that Cellspin discovered this in November 2022 simply illustrates Cellspin's diligence in this regard and does not absolve the District Court of its own obligations. It is squarely each individual judge's responsibility to be abreast of the business dealings of their spouse and immediate family, including all potential conflicts of interest; it is not the duty of each and every party to independently perform extensive background research. Section 455(c) provides that "[a] judge should inform himself about his personal and fiduciary financial interests and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household." This was exactly the Judicial Conference Committee's concern in Advisory Opinion 110. Finally, Cellspin had no way of knowing in 2021 or early 2022 that the Court of Appeals for the Federal Circuit would decide the *Centripetal Networks* case regarding blind trusts the way it did.

In this case, and under these specific facts, the District Court abused its discretion in rejecting Cellspin's Motion for Recusal.

### D. GOOGLE FUNDING OF AJAX STRATEGIES STARTUPS AND PARTNERSHIPS REQUIRES RECUSAL AND VACATUR.

In her Order regarding her husband's Ajax-Google affiliation, Judge Gonzalez Rogers claims that Cellspin is "relying on nothing but speculation." (Appx0013 at 13:12-13). Yet Cellspin has not relied on any such "speculation," and in any event the standard literally requires an objective assessment of the *perception* of bias to the public. Moreover, all evidence and documents regarding the Ajax-Google funding, the Ajax-Google partnerships, and Matt Rogers' Ajax affiliations, are publicly available. Examples of those non-speculative public documents are Matt Rogers' LinkedIn profile, Ajax portfolio company's corporate press releases, news articles about Ajax portfolio companies, corporate blog posts, Ajax Strategies own website webpages, well known industry articles including CNBC, and more. And all that publicly available evidence show that "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (citations and internal quotation marks omitted). This is not speculation.




*Figure 3 – Ajax Strategies LLC Website Shows Judge Gonzalez Rogers' Husband, Matt Rogers is an Operating Partner at Ajax Strategies LLC. (Excerpt from Exhibit 6 at Appx0030, Appx0935).*

The facts relevant to the Matt Rogers Ajax-Google affiliation are:

- Matt Rogers is an *operating partner* at Ajax Strategies, a Venture Capital Firm in San Francisco. (Appx0030-0031, Appx0100–0101, Appx0892–0893, Appx0935).

- Google has invested with others combined total of ***$700 Million*** dollar in Matt Rogers' Ajax Strategies Portfolio companies. (Appx2141).

- Matt Rogers' portfolio company "Planet" is funded by Google. (Appx0031–0032 (quote from CNBC article), Appx0140–0141. Google has not denied this fact. Google has NOT denied this fact. (Appx1101–1117).

- Matt Rogers' portfolio company hydropower startup "Natel Energy" is funded by Google. (Appx0034, Appx0172–0174, Appx2140–2141). Google has not denied this fact. (Appx1101–1117).

- Matt Rogers' portfolio company start-up "Ripple Food" is funded by Google. (Appx0032, Appx0178, Appx2140). Google has not denied this fact. (Appx1101–1117).
- Matt Rogers' portfolio company "Lime" has strategic partnership with Google. (Appx0034, Appx1010–1012, Appx2140). Google has not denied this fact. (Appx1101–1117).
- Matt Rogers' portfolio company "Voltus" has partnership with Google. (Appx0033, Appx0197–0199, Appx2140). Google has not denied this fact. (Appx1101–1117).
- Matt Rogers' portfolio company "StreetLight Data" has partnership with Google. (Appx0033–0034, Appx1023, Appx2140). Google has not denied this fact. (Appx1101–1117).
- Matt Rogers' portfolio company "Descartes Labs" has customer partnership with Google. (Appx0034, Appx1031–1035, Appx2140). Google has not denied this fact. (Appx1101–1117).
- Matt Rogers' portfolio company "Regrow" has partnership with Google. (Appx0034, Appx1051–1055, Appx2140). Google has not denied this fact. (Appx1101–1117).
- Google failed to provide a declaration that it does not have any financial interest/relationship with any of the eight Matt Rogers Ajax Strategies companies.

(Appx2140).

Still further, Judge Gonzalez Rogers has admitted the following facts in her erroneous Order denying Recusal:

- Matt Rogers "has been an Operations Partner at Ajax since April 2022." (Appx0012 at 12:12–13).
- Matt Rogers "is a contractor for Ajax." (Appx0012 at 12:15).
- Matt Rogers "represents Ajax's interests." (Appx0012 at 12:16).
- Matt Rogers is "serving on the board of Natel" an Ajax Strategies company. (Appx0012 at 12:16–17).
- Matt Rogers is "a board advisor to another company" Ojjo, another Ajax Strategies portfolio company. (Appx0012 at 12:17).
- "Planet Labs,… is one of …customers of Natel" (Appx0012 at 12:20).
- Natel, Ojjo and Planet Labs are Ajax portfolio companies. (Appx0012).

**Google Ajax Funding**

Like the public, Cellspin is aware of the fact that the $700 Million in Google with others funding in Ajax predates the tenure of Matt Rogers at the company (as stated in the Order). (Appx0013, Appx2141).

Plainly, Cellspin is not contending that Matt Rogers drove a truck with all the investment money from Google to Ajax headquarters after he was employed in 2022. What plaintiff is contending, however, is that because of the hundreds of

millions of dollars in Google funding in the Ajax Strategies companies, an objective person would safely conclude that Matt Rogers has financial interest in maintaining Google as an investor in Ajax.

Regardless, the timely is irrelevant as Ajax and Google each have a financial interest in the other, some even require Google to even have a business platform, such as Planet. District Court Judge Gonzalez Rogers is either not aware of or is misrepresenting the VC funding timeline structure. Most VC funding are **tranche** investments, that lets investors split investments into parts over time and sometimes years. This way investors (Google) can give money to businesses over time instead of all at once.

Usually, a business getting a tranche investment will get pre-negotiated payments every year as long as it achieves financial milestones decided by the investor. Just because the funding agreement predates the employment of Matt Rogers does not mean all the money is in the company's bank account before he joined Ajax. It is expected that the Google money will be distributed over years. Matt Rogers' Ajax would have to maintain Google as an investor in Ajax companies over these years to get tranche payments. The relationship does not stop the day of the signing of the funding agreement, as alluded by Judge Gonzalez Rogers, which she states without a declaration from her husband.

**Google Ajax Partnerships**

Plaintiff is aware that partnerships with "Streetlight Data" portfolio company predates Matt Rogers' Ajax affiliation as asserted by Judge Gonzalez Rogers. (Appx0013 at 13:6–7). But the Judge conveniently fails to address the "Voltus" Google partnership press release exhibit that is from 6th of April 2022 (Appx0033, Appx0197–0199) after Matt Roger joined Ajax Strategies and that does not pre date Matt Rogers' Ajax affiliation. The Judge also fails to address the dates and details of Google Partnership with "Descartes Lab" (Appx0034, Appx0212) and June 2022 "Regrow" partnership blog post (Appx0034–35, Appx0228) and the importance of Google highlighting these two Ajax companies on Google's own website.

What Plaintiff is contending is that because of these (5) five strategic Google partnerships with operating partner Matt Rogers' Ajax Strategies companies, an objective person would reasonably conclude that Matt Rogers has a financial interest in maintaining Google as a Partner. There is, at minimum, the appearance of such an interest.

Further, Judge Gonzalez Rogers states as hearsay that "the undersigned's husband has no interest or relationship with Lime, Voltus, Streetlight Data, Descartes Lab, Regrow, and Ripple Foods." (Appx0012 at 12:18–19). It is impossible for an objective person to believe that Ajax Strategies operating partner

Matt Rogers is not helping or working with any of the other Ajax partners in meetings and in general and has no working or business relations or interest the overall growth of the Ajax Strategies Venture Capital Firm, especially when he is a board member on two of their portfolio companies and even an appointed SEC director for one. Judge Gonzalez Rogers' Order states: "No evidence supports any personal affiliation because none exists." (Appx0013 at 13:7–8). This completely misses the point Plaintiff is making. Plaintiff has established that a clear personal affiliation exists between Matt Rogers and Ajax Strategies. Because Google has invested hundreds of millions of dollars in (3) three Ajax Strategies companies and five (5) Ajax Strategies companies have strategic partnerships with Google, it appears as though Ajax and Matt Rogers have financial interest in maintaining Google both as an investor and as a strategic partner.

**With respect to Matt Rogers' Natel Energy company.**

For the first time in her Order, Judge Gonzalez Rogers disclosed that Matt Rogers serves on the Board of Natel Energy. (Appx0012 at 12:16–17). This new information prompted Cellspin to look for SEC filing for Natel Energy and Cellspin discovered that the Judge conveniently forgot to mention that Matt Rogers not only servers on the Board of Natel Energy as asserted by the Judge herself, *he is also a "Director"* of Natel Energy according to SEC filings. To clarify, not all

company board members are company directors registered with SEC, but Matt Rogers is.

| Last Name | First Name | Middle Name |
|---|---|---|
| Rogers | Matt | |
| Street Address 1 | Street Address 2 | |
| 2401 Monarch Street | | |
| City | State/Province/Country | ZIP/Postal Code |
| Alameda | CALIFORNIA | 94501 |

Relationship: ☐ Executive Officer ☒ Director ☐ Promoter

Clarification of Response (if Necessary)

*Figure 4 – Excerpt from http://edgar.secdatabase.com/1905/147010122000001/filing-main.htm as last visited on March 20, 2023.*

Judge Gonzalez Rogers' Order further states that her husband has "no equity in any Ajax portfolio." (Appx0012 at 12:15). It is well known in Silicon Valley that Startup board members and Directors get awarded equity in the startups. It is hard for an objective person to believe that Matt Rogers, who is not only Board Member of Natel Energy but also an SEC publicly named Director of Natel Energy would have zero equity shares in Ajax portfolio company's Natel Energy. Similarly, since Matt Rogers is also "a board advisor to [Ojjo] company," another Ajax portfolio company, it seems implausible that he does not have any equity in Ajax portfolio company. (Appx0012 12:16–17, 27).

For the first time in her Order, Judge Gonzalez Rogers also states that Matt Rogers is purportedly just a "contractor" for Ajax and a board advisor to Ojjo. (Appx0012, 12:15). Matt Rogers, however, has NOT disclosed his role as a contractor for Ajax, serving on the board of Natel Energy, being Director at Natel Energy at SEC, and a board advisor to Ojjo, on his LinkedIn profile.

Simply put, Matt Rogers is much more than a contractor for Ajax. Again, Matt Rogers is an SEC disclosed Director on Natel Energy's Board representing the interests of Ajax Strategies. Judge Gonzalez Rogers takes issue with the language of "Power Technology" article from 2019 and says that "According to the article, Natel secured funding from two venture funds" (Appx0013 at 13:27–28) and that "The undersigned and her husband have no knowledge of any investment by Google into Natel." (Appx0013 at 13:28).

But according to Natel Energy August 21, 2019, SEC FORM D there were four (4) investors in that funding round, *not just two* as alluded by Judge when critiquing the language of "Power Technology" article from 2019. *See* https://www.sec.gov/Archives/edgar/data/1470101/000147010119000001/xslFormDX01/primary_doc.xml (excerpt from this SEC link shown in figure below).

**13. Offering and Sales Amounts**

Total Offering Amount $23,966,700 USD or ☐ Indefinite

Total Amount Sold $15,624,374 USD

Total Remaining to be Sold $8,342,326 USD or ☐ Indefinite

Clarification of Response (if Necessary):

**14. Investors**

☐ Select if securities in the offering have been or may be sold to persons who do not qualify as accredited investors, and enter the number of such non-accredited investors who already have invested in the offering.

Regardless of whether securities in the offering have been or may be sold to persons who do not qualify as accredited investors, enter the total number of investors who already have invested in the offering: 4

*Figure 5 – Excerpt from SEC website as last visited on March 20, 2023, at https://www.sec.gov/Archives/edgar/data/1470101/000147010119000001/xslFormDX01/primary_doc.xml.*

And in concurrently filed Natel Energy SEC Form D filing dated August 8, 2019, there were nine (9) investors in that funding round, not just two as alluded by Judge when critiquing the language of "Power Technology" article from 2019. *See* SEC website as last visited on March 20, 2023, at https://www.sec.gov/Archives/edgar/data/1470101/000147010122000001/xslFormDX01/primary_doc.xml (excerpt from this SEC link shown in figure below).



**13. Offering and Sales Amounts**

| | |
|---|---|
| Total Offering Amount | $47,976,701 USD or ☐ Indefinite |
| Total Amount Sold | $30,589,009 USD |
| Total Remaining to be Sold | $17,387,692 USD or ☐ Indefinite |

Clarification of Response (if Necessary):

**14. Investors**

☐ Select if securities in the offering have been or may be sold to persons who do not qualify as accredited investors, and enter the number of such non-accredited investors who already have invested in the offering.

Regardless of whether securities in the offering have been or may be sold to persons who do not qualify as accredited investors, enter the total number of investors who already have invested in the offering: 9

*Figure 6 – Excerpt from SEC website as last visited on March 20, 2023, at https://www.sec.gov/Archives/edgar/data/1470101/000147010122000001/xslFormDX01/primary_doc.xml.*

Again, Google has failed to provide a declaration that it does not have any financial interest or relationship with Natel Energy, as has Matt Rogers. Assuming *arguendo* that Ajax company Natel Energy is not funded by Google, that brings the total funding by Google and others in Ajax companies to **$620 Million**, which is still very substantial amount for an objective person.

Stull further, Judge Gonzalez Rogers' Order states that "undersigned's husband is a contractor for Ajax with no equity in any Ajax portfolio [ ] in Planet Labs, at most his affiliation is attenuated." (Appx0012 at 12:12-21). The District Court had an opportunity to produced financial evidence about Matt Rogers' Ajax involvements but:

- Failed to produce Matt Rogers' *Director Compensation Plan* for Natel Energy (SEC) an Ajax portfolio company.

- Failed to produce Matt Rogers' *Board Advisor Compensation Plan* for Natel Energy an Ajax portfolio company.
- Failed to produce Matt Rogers' *Board Member Compensation Plan* for Ojjo an Ajax portfolio company.
- Failed to produce Matt Rogers' *Ajax Operating Partner Compensation Plan*.
- Failed to produce Matt Rogers' *Ajax 1099 as a Contractor.*

Assuming *arguendo* every fact the District Court asserted in its Order about Matt Rogers is true without any evidence or declaration, an objective person who is told about the details of Matt Rogers' Ajax Google funding and Ajax partnerships with Google *"would conclude that the judge's impartiality might reasonably be questioned." United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

Presently in the publicly charged concern over government ties to business interests and possibly even foreign governments, the strict adherence to the principals and plain text of Section 455(a) must be maintained and adhered to preserve public confidence in our judicial institutions outlined under Article III of the U.S. Constitution. Here, Cellspin as the moving party has met its 'heavy burden' to bring up the public perception of bias. Respectfully, Judge Gonzalez Rogers pulling back an arm's length review of her perceived bias by her peers created more of a cloud of suspicion than less.

### E. FEDERAL JUDGES HAVE NO 28 U.S.C. § 455(D) EXCEPTION FOR INVESTING $5–$25 MILLION IN A HEDGE FUND.

Judge Gonzalez Rogers' 2020 and earlier financial disclosures includes a $5–$25 Million dollar investment holding by the name of *"McKinsey & Company Special Situations Aggressive Long-Term". Cellspin pointed this out in its Motion for recusal.* (Appx0043–0045).

When Cellspin did the research on *"McKinsey & Company Special Situations Aggressive Long-Term"* last year, there was hardly anything that came up. This is the reason Cellspin's Motion called it out as "opaque" holding. The only thing that did come up was the Beth F. Cobert "Ethics Agreement" with the US "Office of Management and Budget" during her confirmation. In that instance, Ms. Cobert had to agree to recuse herself and divest from her "McKinsey & Company Special Situations Aggressive Long-Term" investment holdings. (Appx0043–0045).

Akin to Section 455(c) governing Article III of the Judiciary, ignorance of financial interests is not allowed by appointees to positions within the Executive Branch, either. That is the analogy Cellspin made with respect to Ms. Beth F. Cobert. There, ethics is covered in relevant part by Title 18 U.S.C. Section 208. (Appx2136–2137).

I have disclosed in my financial disclosure report financial interests in the following funds:

1. Compass Special Situations Fund, LLC;
2. Compass Global Private Equity Capital Fund;
3. Compass European Private Equity Capital Plan;
4. Special Situations Investment Fund, L.P.; and
5. Special Situations Aggressive Long-Term Portfolio.

However, the funds' managers declined to provide me with sufficient information to enable me to disclose the funds' underlying assets in my financial disclosure report. Therefore, I will divest my financial interests in these funds within 90 days of my confirmation. With regard to each of these funds, until I have divested the fund, I will not participate personally and substantially in any particular matter in which to my knowledge I have a financial interest, if the particular matter has a direct and predictable effect on the financial interests of that fund, or its underlying assets, unless I first obtain a written waiver pursuant to 18 U.S.C. § 208(b)(1), or qualify for a regulatory exemption pursuant to 18 U.S.C. § 208(b)(2).

Upon confirmation, I will resign from all of my positions with McKinsey & Company ("McKinsey" or the Firm"), including my positions as a McKinsey Director, as Co-leader of the Firm's

*Figure 7 – Excerpt from Exhibit 34 (Appx0847).*

Ms. Cobert was not able to obtain the transparency required to disclose her financial interests in McKinsey & Company "Special Situations Aggressive Long-Term Portfolio." Although she made an inquiry of the manager, she still did not get details to allow her to avoid conflicts of interests with the position she was to be appointed to. As such, she made plans to completely divest herself from any financial interest holdings in McKinsey & Company Special Situations Aggressive Long-Term Portfolio. There is no meaningful difference between the situation

involving Ms. Cobert and the District Court Judge in this case; both are required to fully divest.

***For the first time in her Order****,* Judge Gonzalez Rogers gave additional detail about this opaque holding, and changed the name of the fund in her Order to a MIO "Special Situation Fund." (Appx0017–0018, citing https://www.miopartners.com/). But the MIO Website has no mention of Judge holding called in her financial disclosure form by the name *"McKinsey & Company Special Situations Aggressive Long-Term."* The misidentification of funds in an annual disclosure for years by the district court judge warrants recusal because it thwarts the ability of the public to assess potential judicial conflicts and it is not approved under Section 455(4)(i), which recites, in pertinent part, that "(4) 'financial interest' means ownership of a legal or equitable interest, however small, or a relationship as **director**, adviser, or other **active participant in the affairs of a party**, **except** that: (i) Ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund; . . ." Section 455(4)(i).

A judge is allowed to own a mutual or common investment fund. The SEC explains mutual funds and investment funds are considered **open-end** companies. *See* https://www.sec.gov/answers/mfinvco.htm as last visited on March 22, 2023. While Judge Gonzalez Rogers provides an updated name, it is still not accurate. The actual name of her investment is the *Compass* Special Situation Fund, LLC,

managed by MIO. *It is not a mutual fund*. It is a closed-end investment company. Again, MIO even files every year to exempt it from the Investment Company

Judge Gonzalez Rogers takes the mistaken position that the "Special Situation Fund [ ] functions in essence like a mutual fund." (Appx0017 at 17:13–14). This is incorrect. A mutual fund is regulated by the SEC under the authority of Investment Company Act of 1940. In stark contrast, MIO's Special Situation Fund, which has the full name of "Compass Special Situation Fund, LLC") is not regulated by the SEC and each year MIO files an exemption under Section D to avoid being regulated by the SEC like open-end funds.[1] Judge Gonzalez Rogers is investing in a closed-end fund.[2] According to the SEC, Compass Special Situation Fund is **not** a Mutual fund or a Pension Fund. According to **MIO partners own website** under "What We Do" it says: "The majority of MIO's active assets under management are managed with full discretion by third-party managers (i.e., **hedge funds, private equity,** and other alternative investment managers)." (Figure 8).

[1] As last visited on March 21, 2023, at https://www.sec.gov/Archives/edgar/data/1457542/000145754220000001/xslFormDX01/primary_doc.xml.

[2] *See* https://www.sec.gov/answers/mfinvco.htm as lasted visited on March 21, 2023.

https://www.miopartners.com

MIO Who We Are What We Do Governance Fund Managers Contact Us Careers Client Login

**Investment Management Services**[3]

MIO manages approximately $20 billion of assets across public and private markets. The majority of MIO's active assets under management are managed with full discretion by third-party managers (i.e., hedge funds, private equity, and other alternative investment managers). We either place these funds directly, as a limited partner, with the third-party managers or we hire them to manage our capital on a discretionary basis in a separately managed account in vehicles that are operated by MIO. Our portfolio of third-party managers is highly diversified across strategies, asset classes, and geographies, with well over 100 managers deploying dozens of distinct strategies. MIO grants full trading discretion and authority to these managers and focuses on monitoring performance and risk limits.

*Figure 8 – Excerpt from https://www.miopartners.com/.*

[X] Pooled Investment Fund

[ ] Hedge Fund

[ ] Private Equity Fund

[ ] Venture Capital Fund

[X] Other Investment Fund

Is the issuer registered as an investment company under the Investment Company Act of 1940?

[ ] Yes [X] No

*Figure 9 – MIO's Compass Special Situations Fund, LLC (2020 SEC Filing of Exempt Status).*[3]

Judge Gonzalez Rogers' Order recites that "MIO does not trade individual stocks or bonds of any public or private company anywhere in the world." (Appx0017 at 17:19–20). But this statement is contradicted by the SEC's 2021 investigation into MIO. There, the SEC explained that "MIO invested

---

[3] As last visited on March 21, 2023, at https://www.sec.gov/Archives/edgar/data/1457542/000145754220000001/xslFormDX01/primary_doc.xml.

approximately 90% of MIO client assets indirectly, through third-party managers who exercise their own investment discretion (*i.e.*, a so-called **'fund-of-funds'** strategy), and the remaining approximately **10% directly, by purchasing and selling securities**." *See* SEC Lawsuit Against MIO page 3, ¶¶ 8 and 9 available at SEC website as last visited on March 21, 2023. https://www.sec.gov/litigation/admin/2021/ia-5912.pdf.

**Background**

**A. The Business, Operational Structure, and Oversight of MIO**

8. MIO provides investment options exclusively to current and former partners and employees of McKinsey. During the Relevant Period, MIO invested approximately 90% of MIO client assets indirectly, through third-party managers who exercise their own investment discretion (i.e., a so-called "fund-of-funds" strategy), and the remaining approximately 10% directly, by purchasing and selling securities.

9. For MIO's direct investments, MIO had investment discretion (i.e., MIO made the decision regarding whether to buy or sell each security subject to a direct trading policy which prohibited, except in specified circumstances, direct investment in the debt or equity of corporations) and had full knowledge of all securities held, including the number of shares of each security.

*Figure 10 – Excerpt from SEC Order regarding MIO as last viewed on the SEC Website on March 21, 2023 at https://www.sec.gov/litigation/admin/2021/ia-5912.pdf.*

The MIO's Compass Special Situations Fund is not a proper investment under Section 455(d)(4)(i). This investment company sells securities that are not regulated by the SEC pursuant to MIO's filed exemption.[4]

[4] As last visited on March 21, 2023, at https://www.sec.gov/Archives/edgar/data/1457542/000145754220000001/xslFormDX01/primary_doc.xml.

In contrast, mutual funds are regulated investment products offered to the public and available for daily trading. Thus, it is mischaracterization of the Investment Company Act of 1940 to equate MIO's Compass Special Situation Fund, LLC with an allowed investment under Section 455(d)(4)(i), as no such exemption exists. Judge Gonzalez Rogers' substantial financial investments in the millions into a closed-end fund named Compass Special Situation Fund, LLC was never a proper investment under Section 455(d)(4)(i), as the public and she herself does not have the transparency required under Section 455(c) to avoid obtaining a financial interest in a party to litigation proceeding in her courtroom.[5] As early as Nov 19, 2021, MIO partners were involved in **SEC Violations for insider trading**. *"McKinsey Affiliate to Pay $18 Million for Compliance Failures in Handling of Nonpublic Information."* (https://www.sec.gov/news/press-release/2021-241). MIO's "Special Situation Fund" is a **Hedge Fund.** It is not Mutual fund as asserted by the Judge in her order. For example, in the July 08, 2019 Article "The Story McKinsey Didn't Want Written," recites, "the secretive **hedge funds** that MIO manages for McKinsey partners," "It's alarming they have a hedge fund," and that MIO's Special Situation Fund is a "unique internal **hedge fund**." (Figure 11, as last visited on April 21, 2023, https://www.institutionalinvestor.com/article/b1g5zjdcr97k2y/The-Story-

[5] Even when Judge Gonzalez Rogers acknowledged that her financial disclosures for years 2021 and 2022 were not available to Plaintiff, she still did not provide them to Plaintiff to allow Plaintiff to challenge her Order denying Recusal to a panel of her peers.

McKinsey-Didn-t-Want-Written).

Institutional Investor

CORNER OFFICE

**The Story McKinsey Didn't Want Written**




Illustrations by Laura Lanr

Tied to the global consulting giant is a massive investment fund. Based on its reaction to this story, McKinsey likely doesn't want you reading much about it.

The same cannot be said for one of its more prominent defrauded investors: MIO Partners, a wholly owned subsidiary and unique internal hedge fund of funds of powerful global consultancy McKinsey & Co. Only the money of McKinsey employees, partners, former partners, and family is allowed in.

"It's alarming they have a hedge fund," says Matthew Stewart, a former consultant at a firm that was started by ex-McKinsey consultants, which he detailed in his book *The Management Myth*.

The 401(k) lawsuit alleges that those fee waivers go to partners, not lower-level employees. "In addition to taking advantage of bankruptcy creditors and misleading the federal courts, McKinsey has also taken advantage of its employees by using its company retirement plans as a piggybank to subsidize its MIO investment unit and the secretive hedge funds that MIO manages for McKinsey partners outside of the [pension] plans for free," Kai Richter, partner at Minneapolis law firm Nichols Kaster, wrote in a recent pleading in New York federal court. The lawsuit cites one MIO investment contract that did not charge fees to the partners, whereas pension plan participants paid fees on the same investment.

hedge funds — MIO's Compass Special Situations Fund averaged an annual return above 9 percent, while the S&P 500 index averaged an annual loss of 1.6 percent.

*Figure 11 – Excerpts from website as last visited on March 20, 2023, at https://www.institutionalinvestor.com/article/b1g5zjdcr97k2y/The-Story-McKinsey-Didn-t-Want-Written.*

An objective person who is told about the details of Judge Gonzalez Rogers' misrepresentation of funds in her financial disclosure for at least 2015 through 2020 by listing it under the wrong name, and the details about her $5–$25 million dollar private closed-end fund that has been accused by SEC in 2021 for insider trading, *"a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (citations and internal quotation marks omitted).

### F. NO 28 U.S.C. § 455(D) EXCEPTION FOR INVESTING $10–$43 MILLION IN AN INDEX FUND.

Financial investments allowed by judges appointed for life are limited by § 455(d). While the amount of the financial investment is not determinant, it is nonetheless illuminating to help ascertain if Cellspin has met its burden in proving that recusal is appropriate in this case to avoid the perception of bias in this litigation.

**Facts about Judge Gonzalez Rogers Index Fund Holdings**

1. Judge Gonzalez Rogers has anywhere **between $9.4 to $43.5 million dollars** invested in Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund. (Appx0036, Appx0238, Appx1641).

2. Google makes up approximately **4%** of Vanguard 500 Index Fund. (Appx0037, Appx0239, Appx0844)

3. It is public knowledge that Google stock has been in the **Top 10 holding** of Vanguard Index Fund for *years.* Defendant Google does NOT deny this fact.

4. Judge Gonzalez Rogers **does not deny knowing** that Google is in the Top 10 stock holding of her Vanguard Index Fund.

5. Congress and the intent of Advisory Opinions is that a Judge should not have stock holdings in a party when she is ruling on that case.

6. Section 455(c) instills a duty to be informed of investments.

**To avoid doubt, Cellspin's contention is not directed at regular Mutual Funds**. In regular Mutual funds, stocks are bought and sold every day, week, and month. For example, a regular Mutual fund manager buys stocks A, B, and C one week and may sell those stocks the next week, and then buy stocks X, Y, and Z. Then, next month sell those stocks and buys stocks L, M, and N and so on and so forth. Mutual funds invest in a changing list of securities chosen by an investment manager. (Appx0817*,* Appx0829–0831). This ever-changing nature of regular Mutual Funds makes it acceptable for a Judge to own $1,000 or $10,000,000 worth of a regular Mutual Fund. But unlike mutual funds, "Index Funds" invest in a specific list of securities. Index Funds employ *"Passive Management"* and "holding each stock in approximately the same proportion as the weighting of the index." (Appx0843). Index funds merely "Hold" the securities that make up that specific Index. Whereas, for regular mutual funds, managers rely on research to "buy and sell" to outperform the average returns of a market. Index funds just

"hold" the stocks. Thus, owning Judge Gonzalez Rogers' Index funds was just another way to HOLD/Own Google Stock, by another name.



**Investment objective**

Vanguard 500 Index Fund seeks to track the performance of a benchmark index that measures the investment return of large-capitalization stocks.

**Investment strategy**

The fund employs a "passive management"—or indexing—investment approach designed to track the performance of the Standard & Poor's 500 Index, a widely recognized benchmark of U.S. stock market performance that is dominated by the stocks of large U.S. companies. The fund attempts to replicate the target index by investing all, or substantially all, of its assets in the stocks that make up the index, holding each stock in approximately the same proportion as its weighting in the index.

**Vanguard 500 Index Fund (VFINX)**

Top 10 Holdings (27.43% of Total Assets) — Get Quotes for Top Holdings

| Name | Symbol | % Assets |
|---|---|---|
| Apple Inc | AAPL | 5.92% |
| Microsoft Corp | MSFT | 5.62% |
| Amazon.com Inc | AMZN | 4.06% |
| Facebook Inc Class A | FB | 2.29% |
| Alphabet Inc Class A | GOOGL | 2.02% |
| Alphabet Inc Class C | GOOG | 1.97% |
| Berkshire Hathaway Inc Class B | BRK.B | 1.44% |
| Tesla Inc | TSLA | 1.44% |
| NVIDIA Corp | NVDA | 1.37% |
| JPMorgan Chase & Co | JPM | 1.30% |



**What's a management style?**

Management style is the method used to select a fund's investments. Indexing seeks to match, rather than outperform, the return and risk characteristics of an index, by holding all, or a representative sample of, the securities that make up the index. Active management seeks to outperform the average returns of the financial market. Active managers rely on research, market forecasts, and their own judgment and experience in selecting securities to buy and sell.

*Figure 12 – Excerpts from Exhibit 32, 33 to Motion for Recusal. (Appx0037, Appx0040, Appx0843, Appx0845).*

As the Vanguard Index 500 fact sheet says: it employs **"Passive Management"** (Appx0843, Appx0845) which means that NO ONE is actively

managing the Index fund. If nobody is managing the fund, then everybody is managing it (including Judge Gonzalez Rogers), because everyone knows what stocks are part of the Index fund (and especially the top ten holdings of the index fund). (Appx0844). That means index funds belong to the exception and fall under the restrictions of § 455 (d)(4)(i): "unless the judge participates in the management of the fund." Importantly, in the case of Vanguard 500 Index Fund, there is **NO active buying and selling** of the stocks. Because Judge Gonzalez Rogers **knows** what the "Stock Holdings" of the Index fund are, at all times, it must track the Index, she has not divested herself from owning stocks in Google. *This is akin knowingly putting Cisco stock into a blind trust, which does not amount to the required divestment because the government employee (here an Article III Judge)* ***still knows*** *of the specific stock ownership.* Thus, investing in an Index funds in the millions of dollars provides a foreseeable investment in Google. If someone invests extraordinary amount of money $10 Million or $40 Million in Index fund, it is objectively reasonable to conclude that they know what the stock holding of those funds are every day. Google makes up approximately 4% of the S&P Index (Appx 0037, Appx 0239, Appx 0844), and *the Judge knows and she has not denied in her ruling that she knows* that she has anywhere between $400,000 or $1,600,000 in Google Stock through her Index funds. **It is the certainty of knowing the stock investment that Cellspin is bringing to light with Index Fund investing.** Both

the Vanguard website and Vanguard Fact Sheet say that Vanguard Index funds *are not actively managed*. *See* Appx0843, Appx0845.

The Section 455(d)(4)(i) exception only applies to ownership in a mutual fund or common investment fund, unless the judge participates in the management of the fund. Moreover, an index fund is not a "common investment fund." A common investment fund ("CIF") is a means of pooling the investments of a number of pension schemes to centralize management of those investments and provide economies of scale in running costs. The participating schemes must all be registered pension schemes of the same employer or associated employers. *See* Appx 0840. Judge Gonzalez Rogers' investments in "Vanguard 500 Index Fund" and "Vanguard Total International Stock Index" should NOT qualify under the mutual fund or common investment fund exceptions for judges.

The Order entered by Judge Gonzalez Rogers states that "Investors in both funds do not obtain any ownership interests in the funds' underlying assets, including by directly holding the stocks." (Appx0015 at 15:17–18). Cellspin contends that holding stocks in an Index Fund which plainly and openly includes specific companies, like Google/Alphabet, is no different than holding the same stocks in a blind trust. This is so, because the awareness by Judge Gonzalez Rogers of her ownership of the Google stock contained within the Index Fund is the same. *Centripetal*, 38 F.4th at 1033. As akin to putting Cisco stock in a blind trust, which

was not divestiture under Section 455(f) in *Centripetal*, here, placing money into the particular Index fund selected by Judge Gonzalez Rogers, ensured a direct and **known** financial interest in Defendant Alphabet (Google).

This Court has instructive precedent on this issue. "While placing the stock in a blind trust removed her control over the stock, it did not eliminate her beneficial interest in Cisco." *Centripetal*, 38 F.4th at 1032. This Court explained the obvious public perception that "the interested party knows what assets he or she placed in the trust" and therefore, "the possibility still exists that the interested party could be influenced in the performance of official duties by those interests." *Centripetal*, 38 F.4th at 1033. The District Court contends that Cellspin failed to meet its burden, but it absolutely has. Further, and again, it is the perception of the public which is the overriding concern; not the back-end realities. And this was made clear by Chief Judge Roberts, Congress and the plain text of Section 455(a). Respectfully, Judge Gonzalez Rogers ignored this mandate, forcing attorneys practicing for over 20 years to reluctantly bring their first Section 455 motion.

The Judicial Conference's Committee on Codes of Conduct have not opined on Index Funds. But judicial financial disclosures, like a privilege log, are designed to identify investments to encourage transparency and allow for challenge and full disclosure where appropriate. And as much as Defendants and the District Court would like to rely on Committee on Codes of Conduct Advisory Opinions, the

words "Index Fund" are not even mentioned. Judge Gonzalez Rogers states that "While not binding, the Committee on Codes of Conduct Advisory Opinion No. 106 is instructive. That opinion lists six factors for consideration: (1) the number of participants in the fund; (2) the size and diversity of fund investments; (3) the ability of participants to direct their investments; (4) the ease of access to and frequency of information provided about the fund portfolio; (5) the pace of turnover in fund investments; and (6) any ownership interest investors have in the individual assets of the fund." (Appx0015 at 15:3–10). But Cellspin's requested recusal is **not** about the size of the fund, number of participants, ease of access, pace of turnover, or the ownership interest in the fund; rather, it is about the **Judge knowing and being fully aware that she has Google stocks in her more than $10 Million Dollar Index Fund.** Index Funds brochures and public websites make Judge Gonzalez Rogers fully aware of her stock holdings in Google. Cellspin's contention is that someone, who has anywhere between $9.4 Million to $43.5 Million in Index Funds is a sophisticated investor that knows (or, at minimum, is reasonably perceived as knowing) what the top ten holdings of that Index Fund are. So while it may seem onerous for an Article III judge, it is the obligation of all Article III Judges to maintain the perception of not being biased and not have a financial interest in a party. Here, Judge Gonzalez Rogers admits she did – Google.

So even if the exemplar financial disclosure referenced the Vanguard Index Fund, the obligation to not have any ownership of stock of a party to the litigation

still applies and the post 2022 Congress enacted new laws to avoid bias and conflicts of interest. And investing in an index fund when a party is Google does not work to circumvent the bright line rule to not own stock in a party. Here, Judge Gonzalez Rogers knows full well that both Google and Apple are in the top ten holdings of the Vanguard Index Fund. Unlike the normal cloudiness of Mutual Funds where stocks are bought and sold every so often, in an Index fund it is very transparent with its holdings of stocks in the Index. As this Court has explained, "we are entitled to give some weight to the committee's views because Congress enacted § 455(b) to match Canon 3C of the Code of Judicial Conduct, which provides in relevant part that a judge 'shall disqualify himself in a proceeding' **where he 'knows that he . . . or his spouse . . . has a financial interest** . . . in a party to the proceeding, . . .'" *Centripetal,* 38 F.4th at 1030. It is impossible to believe that a Judge sophisticated enough to acquire anywhere between $9.4 Million and $43 Million dollars through investments does not know that Google is included in the Vanguard Index Fund and, in any event, the perception of bias arising from such ownership is clear and unmistakable.

While that is not a problem for 99.9% of judges, it mandates recusal under Section 455(a) and Section 455(b)(4) for Judge Gonzalez Rogers. And if she did not know Google was included in the Vanguard Index Fund then she should have known under her obligations to stay informed of her and her husband's stock holdings as required under Section 455(c).

This appeal is proceeding because Judge Gonzalez Rogers misconstrued the application of the "heavy burden" on a party to recuse a judge under § 455. Cellspin met its heavy burden by showing the perception of bias by the Court not recusing herself when one of the biggest companies in the world, Google, bought 100% of Defendant Fitbit, during an ongoing patent infringement lawsuit. At that point, Judge Gonzalez Rogers had the option to divest herself from Index Funds that track the market, including Google (now Alphabet) but she did not do so. Instead, Judge Gonzalez Rogers improperly shifted the burden to Cellspin to purportedly prove whether she did or did not know that her Vanguard Index Funds contained any holdings in Google or any other defendant in the related cases. Again, and to reiterate, this Court has previously explained that "we are entitled to give some weight to the [legislative] committee's views because Congress enacted § 455(b) to match Canon 3C of the Code of Judicial Conduct, which provides in relevant part that a judge '**<u>shall disqualify himself</u>** in a proceeding' **where he '<u>knows</u> that he . . . or his spouse . . . has a financial interest** . . . in a party to the proceeding, . . '". *Centripetal*, 38 F.4th at 1030.

Thus, it was objectively obvious that once Judge Gonzalez Rogers got alerted by the public, media, and Fitbit's own supplemental notice of interested parties that it got bought by Google, she should have *sua sponte* recused herself or fully divested all interests. Unfortunately, for all the parties involved and for the

District Court, she did not. Now, she takes issue with the timing of Cellspin's § 455 motion, yet she knows that none of her financial disclosures for the tax years 2021 and 2022 have been made available to the public, much less Cellspin. In 2021, when Google indicated it purchased Fitbit, the Court should have then told the parties, "Yes, I own Google through an Index Fund, but I'm divesting myself from that fund." She did not. And instead of accepting responsibility for either knowing about her investment and not disclosing it, or just simply not being aware of her investment in Google, a violation of her obligations under § 455(c), the result remains the same – it was an ethical violation of Canon 3 of the Code of Judicial Conduct codified as § 455(b) by Congress for her to continue to own Google stock directly or through an Index fund the moment Google disclosed in a court filing as well as publicly before, that it had acquired 100% ownership of Fitbit. It caused Fitbit to be delisted from all stock exchanges. It was national news, especially in Silicon Valley, where this District Court sits.

A reasonably objective person who is told about the details of Judge Gonzalez Rogers' $9.4 Million and $43.6 Million Index Fund Stock Holdings, and is told that Google makes up approximately 4% of Vanguard 500 Index Fund, which in turn means that she has anywhere between $400,000 or $1,600,000 in Google Stock through her Index funds, *"would conclude that the judge's*

*impartiality might reasonably be questioned." United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

There is no overriding concern over the freedom of judges to invest by precluding judges from owning certain Index Funds that openly include parties to the litigation the public has entrusted them to rule upon impartially. Impartiality is the sole purpose for their life tenure. There are more than seven thousand regular Mutual Funds in US that are available for Judges to invest in. *See e.g.* https://www.statista.com/statistics/255590/number-of-mutual-fund-companies-in-the-united-states/, last visited on April 21, 2023.

The question is if tomorrow an investment company starts a new Index Fund that **just holds stock** of Top 5 US companies: Google, Apple, Facebook, Amazon and Tesla and calls and markets it as a "Top 5 Index Fund" should Judges who rule on those five companies be allowed to own that "Top 5 Index Fund"? Would the intent of the Congress for § 455 be violated by a federal judge owning this "Top 5 Index Fund" **that just holds those 5 stocks, just like a blind trust that just holds Cisco Stock?** The answer is plainly "yes," which is why recusal is required here.

### G. GOOGLE WAS MATT ROGERS' PRIMARY TECHNOLOGY PARTNER AT MCKINSEY.

Facts about Matt Rogers' McKinsey and Google Affiliation include the following:

1. Matt Rogers was a senior partner at McKinsey for more than ten (10) years for its Oil and Gas clients. (Appx0100–0101).

2. Matt Rogers' company "McKinsey" has partnership and alliance with Google. (Appx0026–0028, Appx0910–0911, Appx0919, Appx0930–0932, Appx2140). Google has not denied this fact. (Appx1101–1117).

3. The Judge in her Order does not deny that Matt Rogers worked with Google at McKinsey. The Judge's only contention in her Order is that Google was not Matt Rogers' *primary* partner. (Appx0011).

4. The Judge in her order has not denied that Matt Rogers sold Google services to its Oil and Gas Clients.

5. The Judge in her order has not denied that Matt Rogers compensation was based on Google partnership and its client satisfaction.

6. Google has not itself denied that as an oil gas & energy senior partner at McKinsey, Matt Rogers sold Google services to his oil gas and energy clients. (Appx1101–1117).

Cellspin's allegations is **not** about the "mere fact that McKinsey uses Google Cloud." Rather, senior partner Matt Rogers marketed and sold Google services to his oil & gas clients and that part of his pay and bonus was dependent on his client's satisfaction and success through the use Google services. This is how partners and senior partners at consulting firms like McKinsey traditionally get compensated.

This scenario is not the same as envisioned by Advisory Opinion No. 107 at 209 of businesses that offer services to a judge's spouse, like a bank provider (Bank of America) or wireless provider (AT&T). Here, direct and consequential spousal business relationships existed between Google and Matt Rogers. Thus, recusal is appropriate under at least § 455(b)(4).

Judge Gonzalez Rogers states that the May 2011 disclosure provided in full: "[m]y husband is a senior partner at McKinsey. Matters relating to McKinsey and, more broadly, to *my husband's primary clients* would also likely require recusal." (App0011 at 11:5–7) (emphasis added). Per the District Court, this disclosure differs significantly from Cellspin's statement of same in its Motion, which claims Judge Gonzalez Rogers "disclosed that if a 'primary' client of her husband's consulting firm, McKinsey, became a party before her, she would have to recuse herself." (Appx0011, citing Dkt. No. 366 at 4). Cellspin did not "reconstruct" any statement. Simply put, if Matt Rogers is working full time as a Senior Partner at McKinsey for ten (10) years with McKinsey oil & gas clients, the normal reading and assumption of May 2011 statement would mean primary McKinsey clients he regularly works with, especially since Judge Gonzalez Rogers did not give any other example of *primary clients* in the 2011 statement.

Cellspin alleges that for McKinsey oil & gas clients, Google was and is the primary partner for cloud technology according to publicly available information,

as will be shown below. Judge Gonzalez Rogers states that "the plaintiff did not, and cannot, point to a single instance tying the undersigned's husband to a Google project or partnership." (Appx0011 at 11:12–13). She explains "Nor has plaintiff proffered any admissible evidence that Google was a client, let alone a primary client or partner, of the undersigned's husband." (Appx0011 at 11:14–16).

But Cellspin in its motion and reply brief has proffered publicly available evidence of McKinsey own webpage saying that it has a partnership with Google and it sells Google services to its oil & gas clients. (Appx0919, Appx0930). Cellspin in its motion also highlighted that Matt Rogers' LinkedIn profile expressly states that he has been a Senior Partner at McKinsey for oil & gas clients for over 10 years. (Appx0902). The important point to note in Judge Gonzalez Rogers' statement is that she admits that Matt Rogers did work with Google, but apparently Cellspin has not "proffered any admissible evidence." (Appx0011 at 11:14–15). Yet, none of the evidence submitted by Cellspin was objected to, rejected for any reason, or ruled inadmissible. And it would have been easy for Matt Rogers or Google to put forth a sworn declaration that "Matt Roger has not worked with Google." But neither did.

Judge Gonzalez Rogers states that "it appears that Google was one of several cloud-based service providers for McKinsey." (Appx0011 at 11:26–27). It is true that on its alliance partnership webpage McKinsey touts technology cloud

partnership with Google, Microsoft, Amazon AWS, SAP and Salesforce. (Appx0919). But Cellspin's contention is that according to McKinsey's own webpages, Google is the ONLY cloud provider for Matt Rogers' Oil & Gas clients. The only partnership page that had Matt Rogers' Oil and Gas clients were on, was the McKinsey – Google partnership page that mentioned Google's Cloud Services. (Appx0930, *see also* https://www.mckinsey.com/about-us/overview/alliances-and-acquisitions/Google-Cloud-and-McKinsey).




*Figure 13 – Excerpt from Exhibit 5 to Motion for Recusal. (Appx0930).*

There is **NO** mention of one Oil & Gas client on McKinsey's webpage for **Amazon** AWS Cloud services as last visited on March 21, 2023, at

https://www.mckinsey.com/about-us/overview/alliances-and-acquisitions/AWS-and-McKinsey. There is **NO** mention of one Oil & Gas client on McKinsey's webpage for **Microsoft's** Cloud page services as last visited on March 21, 2023, https://www.mckinsey.com/about-us/overview/alliances-and-acquisitions/Microsoft-and-McKinsey. There is **NO** mention of one Oil & Gas client on page for McKinsey's webpage about **SAP** as last visited on March 21, 2023, https://www.mckinsey.com/about-us/overview/alliances-and-acquisitions/SAP-and-McKinsey. Similarly, there is **NO** mention of a single Oil & Gas client on McKinsey's webpage about its relationship with **Salesforce or its cloud** as last visited on March 21, 2023, **at** https://www.mckinsey.com/about-us/overview/alliances-and-acquisitions/salesforce-and-mckinsey.

Judge Gonzalez Rogers had the opportunity to produce evidence such as a declaration from Matt Rogers himself stating who were his *primary* Oil & Gas Clients, he worked with at McKinsey for 10+ years and that all those primary clients were not sold Google products/services by him or his team. But she did not. Instead, the Court has misconstrued case law about a "heavy burden" to apply it to proving her allege financial interest in a defendant with the improper perception of it existing, which is not allowed under § 455(a).

Judge Gonzalez Rogers has not produced any evidence that Matt Rogers did not work with Google, or that Matt Rogers worked with only non-Google cloud

partners for his Oil and Gas Clients. The circumstantial public evidence Cellspin had put forth is that as an Oil & Gas Senior Partner, Matt Rogers was selling Google products for profit to his McKinsey Clients. Certainly, a reasonable perception of bias exists under the facts as presented by Cellspin.

Senior Partner at McKinsey, Matt Rogers, who with Judge Gonzalez Rogers has anywhere between $5 million to $25 Million in McKinsey "Special Situation Fund," is not some low-level McKinsey Employee. A reasonable assumption can be made that since Google is the **only** Cloud partner mentioned on McKinsey website for their Oil and Gas clients. Senior Partner Matt Rogers had to work with *primary partner* Google for his Oil and Gas Clients.

If an objective person is informed that Matt Rogers sold Google products/services to his McKinsey oil & gas clients, "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (citations and internal quotation marks omitted).

## VII. JUDGE GONZALEZ ROGERS' VIOLATION OF SECTION 455(A), (B) AND (C) WAS NOT HARMLESS ERROR.

Judge Gonzalez Rogers' violations of Section 455 were not harmless error; thus the proper remedy is vacatur of her summary judgment order. *See Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 862 (1988) ("If we conclude that

the requirements of § 455(f) were not satisfied, the second question is the proper remedy, which turns in large part on whether Judge Morgan's failure to disqualify himself was harmless error.”). “As we explained in *Shell*, to determine whether vacatur is the appropriate remedy for a violation of § 455(b), we apply the harmless error analysis set forth by the Supreme Court in *Liljeberg*.

Under that test, “mandatory recusal does not require mandatory vacatur.” *Shell*, 672 F.3d at 1293; *see also Williamson v. Ind. Univ.,* 345 F.3d 459, 464–65 (7th Cir. 2003) (finding vacatur “is not automatically justified” for a violation of § 455 “if [the] error was harmless”). Although *Liljeberg* involved a violation of § 455(a), it is now well-recognized that the harmless error analysis applies equally to violations of § 455(b). *See Centripetal,* 38 F.4th at 1034 (citations omitted).

“Under *Liljeberg*, there are three factors courts should consider when deciding whether to vacate a judgment: (1) ‘the risk of injustice to the parties in the particular case’; (2) ‘the risk that the denial of relief will produce injustice in other cases’; and (3) ‘the risk of undermining the public’s confidence in the judicial process.’” *Centripetal,* 38 F.4th at 1034 (*citing* 486 U.S. at 864, 108).

Here, each of these factors weighs against a finding of harmless error in this case. Plainly, injustice has been done to Cellspin in the form of the District Court’s clearly erroneous summary judgment orders. The denial of recusal and vacatur in these cases will allow an erroneous decision to stand, even in the face of bias.

Equally important is the fact that the public's confidence in the judicial process will be severely undermined if these facts are allowed to stand: a Silicon Valley Judge issuing favorable rulings to tech companies with whom the Judge has substantial financial interests cannot possibly result in anything less than public distrust in the process. This ruling cannot stand.

## VIII. RECUSAL IS APPROPRIATE FOR ALL DEFENDANTS AND VACATUR SHOULD PROPERLY FOLLOW.

Judge Gonzalez Rogers and Defendants Fossil Group, Nike, Nikon, Under Armour, and Garmin completely fail to address the fact that Judge Gonzalez Rogers used the same rationale and reasoning for granting MSJ for all defendants as documented in the twenty plus footnotes Cellspin cited directly from her dispositive Order that applied to all Defendants. (Appx0048). As such, recusal is appropriate and vacatur should properly follow. *See* 28 U.S.C. § 455(c); *Shell Oil Co. v. U.S.*, 672 F.3d 1283, 1289 (Fed. Cir. 2012); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988); *Centripetal*, 38 F.4th at 1033–34. Contrary to Defendants' argument, divesture applies to the "financial interest" and not the related defendants.

In *Shell Oil*, the Federal Circuit addressed Defendants' argument. "Because the divestment exception set forth in § 455(f) applies only to divesting a financial interest in a party, and there is no indication that Congress intended to create an

exception whereby a judge can sever or 'divest' **certain parties** from the case to resolve a conflict, we find Plaintiffs' argument is **not well-taken**. This is particularly true where, as here, there is substantial overlap with respect to the issues involved in the remaining parties' claims, and the matters had been considered jointly throughout the proceedings." *Id.*

Indeed, recusal for just Fitbit, without recusal in the other related patent infringement litigation would create undue harm to Cellspin and be seen as prejudicial by the public. These six (6) cases all involve the same patents, the same dispositive Summary Judgment Order of Non-Infringement that addressed all 6 (six) Defendants with a single order. This Court even consolidated the six (6) appeals on its own accord. And this Court denied Cellspin's motion to deconsolidate due to the "overlap" of issues that the Court itself identified.

If Judge Gonzalez Rogers is allowed to maintain jurisdiction over the other five (5) defendants, then like the district court in *Shell,* she would still not satisfy her statutory requirement to recuse herself under § 455(b). *See Shell Oil,* 672 F.3d at 1291 ("The judge's decision to *sua sponte* sever Texaco and Union Oil did not satisfy the statutory requirement of disqualifying himself from the entire proceeding.").

## IX. CONCLUSION AND PRAYER FOR RELIEF

Cellspin has met its high burden of proving "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned," with any one of the four reasons stated and definitely in the collective. *See United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (citations and internal quotation marks omitted).

The District Court's erroneous Order Denying Recusal and Summary Judgment Order of Non-Infringement should both be reversed. These matters should be remanded to be assigned to a new judge for further proceedings and individual trials on the merits.

April 24, 2023

*/s/ Randall Garteiser*
Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548

**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Attorneys for Plaintiff-Appellant*
CELLSPIN SOFT, INC.

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Federal Circuit Rule 32(b) as modified by Order of the Court at Docket No. 37. This Brief contains 11,891 words, excluding those portions of the brief exempted by Federal Circuit Rule 32(b)(2). This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 14-point Times New Roman font.

*/s/ Randall Garteiser*
Randall Garteiser

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 24, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Randall Garteiser*
Randall Garteiser