**23-1526**

# United States Court of Appeals for the Federal Circuit

CELLSPIN SOFT, INC.,

*Plaintiff-Appellant,*

v.

FITBIT LLC, NIKON AMERICAS, INC., AND NIKON, INC.,

*Defendants-Appellees.*

APPEALED FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
IN CASE NO. 4:17-CV-05928, JUDGE YVONNE GONZALEZ ROGERS

## OPPOSITION BRIEF OF DEFENDANT-APPELLEE FITBIT LLC

Karim Z. Oussayef
Jamie L. Kringstein
Raymond N. Habbaz
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Fax: (212) 351-3401
koussayef@desmaraisllp.com
jkringstein@desmaraisllp.com
rhabbaz@desmaraisllp.com

Adam Steinmetz
DESMARAIS LLP
1899 Pennsylvania Ave NW, Suite 400
Washington, D.C. 20006
Telephone: (202) 451-4900
Fax: (202) 451-4901
asteinmetz@desmaraisllp.com

*Counsel for Defendant-Appellee Fitbit LLC*

July 17, 2023

Counsel for Fitbit LLC certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Fitbit LLC

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Google LLC
XXVI Holdings Inc.
Alphabet Inc.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

DESMARAIS LLP: Tuhin Ganguly, Alan S. Kellman, Jonathan V. Lewis, John Desmarais, Ameet A. Modi

VENABLE LLP: David Shane Brun

GOODWIN PROCTER LLP: Anjali Moorthy, Neel Chatterjee, Rachel W. Walsh

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated: July 17, 2023

*/s/ Karim Z. Oussayef*
Karim Z. Oussayef

# TABLE OF CONTENTS

**Page**


I. STATEMENT OF RELATED CASES ..... ix

II. JURISDICTIONAL STATEMENT ..... 1

III. INTRODUCTION ..... 2

IV. STATEMENT OF THE ISSUES ..... 4

V. STATEMENT OF THE CASE ..... 6

A. Months Before Cellspin Filed Its Disqualification Motion, Cellspin Had Already Filed A Notice Of Appeal From The District Court's Order Granting Summary Judgment Of Noninfringement. ..... 6

B. Long Before Cellspin Filed Its Disqualification Motion, Cellspin Had Access To The Allegedly Relevant Facts Upon Which Its Motion Relied. ..... 8

C. The District Court Found That The Evidence Cited In Cellspin's Motion Did Not Warrant Disqualification. ..... 10

1. The District Court Denied The Grounds In Cellspin's Motion That Relied On Attenuated Connections Between Google And The Judge's Husband's Employers. ..... 10

2. The District Court Denied The Grounds In Cellspin's Motion That Relied On Diversified Investments That Are Not Specific To Fitbit. ..... 14

VI. SUMMARY OF THE ARGUMENT ..... 17

VII. STANDARD OF REVIEW ..... 19

VIII. ARGUMENT ..... 20

A. The District Court Correctly Denied The Relief That Cellspin Requested In Its Untimely Disqualification Motion. ..... 20

1. The District Court Correctly Determined That It Lacked Jurisdiction To Vacate Its Summary Judgment Order After Cellspin Had Already Filed A Notice Of Appeal. ..........20

2. The District Court Correctly Found That Cellspin's Untimely Disqualification Motion Should Be Denied Due To Gamesmanship. ..........22

B. The District Court Correctly Rejected Cellspin's Arguments On The Merits Because Judge Gonzalez Rogers Does Not Have A Disqualifying Financial Interest In Fitbit. ..........26

1. Judge Gonzalez Rogers' Husband's Business Relationships Do Not Warrant Disqualification. ..........27

a. Mr. Rogers Has No Direct Business Relationship With Fitbit Or Its Parent Companies. ..........27

b. Mr. Rogers' Employment At Ajax Has No Relevance To Judge Gonzalez Rogers' Obligations Under § 455. ..........30

c. McKinsey's Use Of Generic Google Technology Does Not Require Recusal. ..........32

d. Cellspin's Appellate Arguments Misrepresent The Law And Improperly Attempt To Shift The Burden To The District Judge To Produce Evidence To Disprove Its Speculative Allegations. ..........34

2. The Judge's Diversified Investments Are Not Specific To Fitbit And Do Not Warrant Disqualification. ..........38

a. The Judge's Investments In Vanguard Index Funds Are Within The Statutory Safe Harbor For "Mutual Or Common Investment Funds." ..........39

b. The Judge's Investment In The Special Situations Fund Is Not A Disqualifying "Financial Interest." ..........46

C. The District Court Correctly Rejected Cellspin's Request For Retroactive Relief Under Federal Rule of Civil Procedure 60. ..........50

IX. CONCLUSION ..........55

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Prairie Constr. Co. v. Hoich*,
594 F.3d 1015 (8th Cir. 2010) ....................35

*Bank of Am., N.A. v. Martinson*,
No. 10-10, 2013 WL 12234207, (W.D. Wis. Jan. 3, 2013) ....................42

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*,
956 F.3d 1228, 1241 (10th Cir. 2020) ....................28

*Calderon v. Conagra Brands Inc*,
No. 22-231, 2022 U.S. Dist. LEXIS 209970 (D. Neb. Nov. 18, 2022) ........40

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
817 F.3d 1316 (Fed. Cir. 2016) ....................19

*Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*,
715 F.3d 501 (4th Cir. 2013) ....................40

*Centripetal Networks, Inc. Cisco Sys., Inc.*,
38 F.4th 1025 (Fed. Cir. 2022) .................... passim

*Cobb v. United States*,
172 F. 641 (9th Cir. 1909) ....................35

*David v. GMAC Mortg., LLC*,
No. 11-2914, 2011 WL 6078272 (N.D. Cal. Dec. 6, 2011) .................. 40, 41

*Doe v. Apple Inc.*,
No. 21-7135, 2022 U.S. App. LEXIS 17918 (D.C. Cir. June 28, 2022).......28

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) .................... 22, 25

*Earles v. Sec'y of HHS*,
No. 10-34, 2011 U.S. Claims LEXIS 901, (Fed. Cl. Apr. 22, 2011) ............38

*Evans v. Stephens*,
387 F.3d 1220 (11th Cir. 2004) ....................28

*Garrett v. Ohio State Univ.*,
60 F.4th 359 (6th Cir. 2023) .......................................................................28

*Gonzalez v. Crosby*,
545 U.S. 524 (2005).......................................................................................55

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982)............................................................................... 1, 20

*Huebner v. Midland Credit Mgmt.*,
897 F.3d 42 (2d Cir. 2018) ...........................................................................40

*Huebner v. Midland Credit Mgmt.,*
No. 14-6046, 2015 WL 1966280 (E.D.N.Y. May 1, 2015) .........................42

*In re Judicial Misconduct*,
527 F.3d 792 (9th Cir. 2008) .........................................................................36

*In re Sch. Asbestos Litig.*,
977 F.2d 764 (3d Cir. 1992) ..........................................................................28

*Klayman v. Blackburne-Rigsby*,
No. 21-7069, 2022 WL 298933 (D.C. Cir. Jan. 20, 2022)...........................28

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ......................................................................... 37, 51, 52

*Liteky v. United States*,
510 U.S. 540 (1994).......................................................................................36

*Melka Marine, Inc. v. United States*,
29 F. App'x 594 (Fed. Cir. 2002) ..................................................................22

*Molina v. Rison*,
886 F.2d 1124 (9th Cir. 1989) .......................................................................22

*Moore U.S.A., Inc. v. Standard Register Co.*,
229 F.3d 1091 (Fed. Cir. 2000) .....................................................................49

*New York City Housing Dev. Corp. v. Hart*,
796 F.2d 976 (7th Cir. 1986) ................................................................ 44, 47

*Our Children's Earth Found. v. EPA*,
527 F.3d 842 (9th Cir. 2008) ....................................................................21

*Perry v. Schwarzenegger*,
630 F.3d 909 (9th Cir. 2011) ................................................................ 37, 45

*Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc.*,
No. 12-355, 2015 WL 1283196 (D. Del. Mar. 18, 2015)...................... 40, 42

*Preston v. United States*,
923 F.2d 731 (9th Cir. 1991) ................................................................ 23, 24

*Ragozzine v. Youngstown State Univ.*,
No. 13-750, 2014 WL 1153715 (N.D. Ohio Mar. 20, 2014) .......................28

*Sacher v. United States*,
343 U.S. 1 (1952)......................................................................................35

*Shao v. Roberts*,
No. 21-5210, 2022 WL 566470 (D.C. Cir. Feb. 23, 2022) ..........................28

*Shorter v. Baca,*
No. 19-56182, 2021 WL 4958857 (9th Cir. Oct. 26, 2021)..........................21

*Shuler v. Duke*,
792 F. App'x 697 (11th Cir. 2019)..............................................................28

*Smith v. BP Exp. & Prod.*,
No. 22-842, 2022 WL 17403568 (E.D. La. Dec. 2, 2022)............................28

*United States v. Asarco Inc.*,
430 F.3d 972 (9th Cir. 2005) .....................................................................19

*United States v. Denton*,
434 F.3d 1104 (8th Cir. 2006) ...................................................................35

*United States v. Farkas*,
149 F. Supp. 3d 685 (E.D. Va. 2016) .........................................................40

*United States v. Farkas,*
669 F. App'x 122 (4th Cir. 2016)...............................................................40

*United States v. McTiernan*,
695 F.3d 882 (9th Cir. 2012) ....................19

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001)....................28

*United States v. Mikhel*,
889 F.3d 1003 (9th Cir. 2018) ....................24

*United States v. Murphy*,
768 F.2d 1518 (7th Cir. 1985) ....................51

*United States v. Nelson*,
718 F.2d 315 (9th Cir. 1983) ....................37

*United States v. Rogers*,
119 F.3d 1377 (9th Cir. 1997) ....................24

**STATUTES**

28 U.S.C. § 455 *et seq.*.................... passim

**RULES**

Fed. R. App. P. 10 ....................49

Fed. R. Civ. P. 60 *et seq.*.................... passim

Fed. R. Civ. P. 7.1 ....................8

Northern District of California, Civil L.R. 3-15 ....................8

**OTHER AUTHORITIES**

Judicial Conference of the United States, Committee on Codes of Conduct
Advisory Opinion No. 106 .................... 40, 41, 45, 48

Judicial Conference of the United States, Committee on Codes of Conduct
Advisory Opinion No. 107 .................... passim

# I. STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Fitbit LLC ("Fitbit") provides the following statement of related cases.

An appeal from the same civil action was previously before this Court as Case No. 2018-1817. The Court issued a precedential opinion on June 25, 2019: *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019). The panel was composed of Judge Lourie, Judge O'Malley, and Judge Taranto. That decision in Case No. 18-1817 also resolved the appeals in the following cases: 2018-1819, -1820, -1821, -1822, -1823, -1824, -1825, -1826.

Another appeal from the same civil action is currently pending before this Court: *Cellspin Soft, Inc. v. Fitbit LLC*, Case No. 2022-2025 (Fed. Cir.).

The following additional cases are known to counsel to be pending, and may directly affect or be affected by this Court's decision:

- *Cellspin Soft, Inc. v. Nike, Inc.*, Case No. 2022-2028 (Fed. Cir.), originating from 4:17-cv-05931-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Under Armour, Inc.*, Case No. 2022-2029 (Fed. Cir.), originating from 4:17-cv-05932-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Fossil Group, Inc.*, Case No. 2022-2030 (Fed. Cir.), originating from 4:17-cv-05933-YGR (N.D. Cal.)

- *Cellspin Soft, Inc. v. Nikon Americas, Inc.*, Case No. 2022-2032 (Fed. Cir.), originating from 4:17-cv-05936-YGR (N.D. Cal.)
- *Cellspin Soft, Inc. v. Garmin International, Inc., et al.*, Case No. 2022-2037 (Fed. Cir.), originating from 4:17-cv-05934-YGR (N.D. Cal.)

Counsel for Fitbit know of no other cases pending in this Court or any other court that will directly affect or be affected by this Court's decision in this appeal.

## II. JURISDICTIONAL STATEMENT

Cellspin's current appeal challenges the district court's denial of its motion to disqualify the presiding judge and vacate the grant of summary judgment in favor of the defendants. *See* Blue Br. at 56; Appx0006-0007. Cellspin filed its underlying disqualification motion, however, after it had already filed its first notice of appeal from the district court's summary judgment order. *See* Appx0006. That first notice of appeal divested the district court of its jurisdiction over the summary judgment order. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Thus, the district court correctly found that it had "no authority to vacate the [summary judgment] order because the appeal divested it of jurisdiction." Appx0006. Cellspin cites no legal authority to support its position that, notwithstanding the district court's correct and uncontested decision that it lacked jurisdiction to grant the requested relief, this Court has jurisdiction to review that decision.

## III. INTRODUCTION

In the case below, Cellspin accused Fitbit and several other defendants of patent infringement. The district court granted summary judgment of noninfringement for multiple independent reasons. Cellspin appealed from that decision, which is a separate case pending before this Court. *Cellspin Soft, Inc. v. Fitbit LLC*, Case No. 2022-2025 (Fed. Cir.).

After Cellspin appealed, Cellspin launched an improper two-step scheme to appeal again. *First*, Cellspin filed a meritless motion for disqualification of the district judge and vacatur of the district court's earlier summary judgment order. The district court issued a strongly worded opinion denying Cellspin's motion, which began as follows:

> In short, [Cellspin's] attack on the integrity of the judiciary, through the undersigned, not only demonstrates a measure of desperation, but is divorced from the law and the facts. Reduced to its essence, and extended to its illogical conclusion, the motion would seek to have federal judges recuse after the appeal of their objective findings, based upon nothing but speculation and attenuation. The argument is extreme and meritless.

Appx0002. *Then*, heedless of the district court's cautionary language, Cellspin filed another appeal, seeking to vacate summary judgment based on its disqualification motion. Cellspin's second appeal, which is the subject of this case, is an illegitimate attempt for a second bite at the apple.

The Court should deny the relief that Cellspin seeks in this second appeal on multiple grounds. *First*, because Cellspin inexcusably waited to file its disqualification motion until after the district court granted summary judgment and after Cellspin appealed from that decision, this Court should: (a) affirm the district court's finding that it lacked jurisdiction to vacate its summary judgment order; and/or (b) affirm the district court's finding that Cellspin's disqualification motion can be denied as untimely. *Second*, because Cellspin failed to show any disqualifying interest, this Court should affirm the district court's denial of Cellspin's motion on the merits. Cellspin relied on irrelevant and indirect alleged connections between the district judge's husband's employers and Fitbit, which do not come close to meriting disqualification under 28 U.S.C. § 455. And Cellspin relied on diversified investments in index funds and retirement plans that do not constitute "financial interests" in Fitbit under 28 U.S.C. § 455. *Third*, because Cellspin failed to show extraordinary circumstances, this Court should affirm the district court's decision not to retroactively vacate the summary judgment order under Federal Rule of Civil Procedure 60.

## IV. STATEMENT OF THE ISSUES

1. Whether this Court should affirm because:

a. The district court correctly exercised its discretion by finding that it lacked jurisdiction to vacate its summary judgment order under Federal Rule of Civil Procedure 60 after Cellspin had already filed its notice of appeal from that order; or

b. The district court correctly exercised its discretion in finding that Cellspin's disqualification motion under 28 U.S.C. § 455. should be denied as untimely because Cellspin had access to all of the relevant information but strategically waited to file until after the district court granted summary judgment in favor of all defendants.

2. Whether this Court should affirm denial of the disqualification motion because the district court correctly exercised its discretion in finding on the merits that:

a. Cellspin raised irrelevant and indirect alleged connections between Fitbit and the judge's husband's employment at Ajax Strategies Venture Capital ("Ajax") and McKinsey & Company ("McKinsey") that are not disqualifying "financial interests" in Fitbit under 28 U.S.C. § 455(b)(4); and

b. The judge's diversified investments in Vanguard index funds and McKinsey & Company Special Situations Aggressive Long-Term fund ("Special Situations Fund") are not disqualifying "financial interests" in Fitbit under 28 U.S.C. § 455(b)(4).

3. Whether this Court should affirm because the district court correctly exercised its discretion by finding that, regardless of any alleged violation of 28 U.S.C. § 455, no extraordinary circumstances exist in this case to warrant vacating the court's grant of summary judgment of noninfringement in favor of the defendants.

## V. STATEMENT OF THE CASE

The defendants below moved for summary judgment of noninfringement on all asserted claims. The district court granted summary judgment in the defendants' favor. Cellspin appealed from that summary judgment order to this Court.

Months later, Cellspin filed a motion for disqualification of the district judge under 28 U.S.C. § 455, which also requested vacatur of the summary judgment order. In its motion, Cellspin alleged four reasons why Judge Gonzalez Rogers should be disqualified under the statute: (1) the judge's husband, Mr. Matt Rogers, allegedly had business relationships with Google through his employment at McKinsey; (2) Mr. Rogers allegedly had business relationships with Google through his employment at Ajax; (3) Judge Gonzalez Rogers is invested in Vanguard index funds, one of which holds Alphabet Inc. stock, one of Fitbit's parent companies; and (4) Judge Gonzalez Rogers is invested in the Special Situations Fund, which is a retirement fund through her husband's employment at McKinsey. *See* Appx0022. The district court denied Cellspin's motion, and Cellspin appealed.

### A. Months Before Cellspin Filed Its Disqualification Motion, Cellspin Had Already Filed A Notice Of Appeal From The District Court's Order Granting Summary Judgment Of Noninfringement.

Cellspin filed the original complaint in this action in October 2017, accusing Fitbit of infringing U.S. Patent Nos. 8,738,794, 8,892,752, and 9,749,847. *See*

Appx2245. On October 31, 2017, this case was assigned to Judge Yvonne Gonzalez Rogers. *See* Appx2303.[1]

On January 27, 2022, Fitbit filed a motion for summary judgment of noninfringement, as did each of the other defendants. *See* Appx0728. On June 7, 2022, the court granted the defendants' motions for summary judgment of noninfringement, Appx0729, and on June 15, 2022, the court entered judgment in favor of each defendant. *See* Appx2306.[2]

Cellspin filed its notice of appeal from the district court's summary judgment order on July 13, 2022. *See* Appx2307. In its notice of appeal, Cellspin represented that it was appealing to the Federal Circuit from "the district court's June 7, 2022, Order styled 'Summary Judgment Orders'" and "the district court's June 15, 2022, Order styled 'Judgment.'" Appx2308. The Federal Circuit issued a Notice of Docketing on July 15, 2022, assigning the matter as Docket No. 2022-2025. *See Cellspin Soft, Inc. v. Fitbit LLC*, No. 22-2025, Dkt. No. 1 (Fed. Cir. July 15, 2022).

---

[1] Around that time, Cellspin filed complaints against thirteen other defendants alleging infringement of one or more of the same patents, and the district court issued a Related Case Order, reassigning all cases to Judge Gonzalez Rogers. *See* Appx2305.

[2] Six of the original cases that Cellspin filed proceeded to summary judgment, and appeals from those cases are currently pending. *See supra*, Statement of Related Cases. A complete summary of the district court summary judgment proceedings is included in Fitbit's responsive brief in Appeal No. 22-2025. *See* Brief of Defendant-Appellee Fitbit LLC, *Cellspin Soft, Inc. v. Fitbit LLC*, No. 22-2025, Dkt. No. 65 (Fed. Cir. Mar. 27, 2022).

Cellspin filed its opening brief in that appeal on December 16, 2022. *See id.*, Dkt. No. 38 (Fed. Cir. Dec. 16, 2022).

On January 20, 2023[3]—more than five months after Cellspin filed its notice of appeal from the district court's summary judgment order and more than a month after Cellspin filed its opening brief in that appeal—Cellspin filed its motion to disqualify Judge Gonzalez Rogers pursuant to 28 U.S.C. § 455. Appx0019. Cellspin's motion included a request to vacate the summary judgment order, which the district court interpreted as a request under Federal Rule of Civil Procedure 60(b)(4) to vacate the judgment "as void." Appx0022; Appx0006. The district court found that it had "no authority to vacate the order because the appeal divested it of jurisdiction." Appx0006.

**B. Long Before Cellspin Filed Its Disqualification Motion, Cellspin Had Access To The Allegedly Relevant Facts Upon Which Its Motion Relied.**

Fitbit was acquired by Google LLC in early 2021 in a widely publicized acquisition. Appx0879. Immediately thereafter, on February 3, 2021, Fitbit submitted in the district court an Amended Corporate Disclosure Statement pursuant to Fed. R. Civ. P. 7.1 and an Amended Certification of Interested Parties pursuant to Northern District of California Civil L.R. 3-15, in which it disclosed that "it is a

[3] Although Cellspin's signature block indicates a date of January 13, 2023, Appx0049, the ECF header demonstrates that the motion was filed on January 20, 2023.

subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company." Appx0885-0886. At that time, Cellspin did not file a motion to disqualify Judge Gonzalez Rogers.

As of the filing of Fitbit's amended Rule 7.1 statement, Cellspin had access to most of the publicly available information upon which the motion is based. For example, Cellspin's allegations regarding Mr. Rogers' employment at McKinsey were based on the judge's 2011 Senate Judiciary Committee Questionnaire, which was filed more than 10 years earlier. *See* Appx0025. Additionally, Cellspin's allegations regarding the judge's financial investments relied on her financial disclosures for the year 2020. *See* Appx0035. Although one part of Cellspin's motion relied on Mr. Rogers' employment at Ajax, which began in March 2022, that information was publicly available more than two months before the district court issued its summary judgment order, and ten months before Cellspin filed its disqualification motion. *See* Appx0029.

Cellspin has not identified any information—either in its district court briefing or in its Blue Brief in this appeal—that it could not have learned long before the district court granted summary judgment of noninfringement, and certainly long before Cellspin filed its disqualification motion. Nor has Cellspin identified any event that occurred in the weeks or months immediately preceding its

disqualification motion that would have triggered the filing. Ultimately, the district court found that "the motion is untimely and can be denied." Appx0009.

### C. The District Court Found That The Evidence Cited In Cellspin's Motion Did Not Warrant Disqualification.

Of the four grounds asserted in Cellspin's disqualification motion, the first two grounds related to Judge Gonzalez Rogers' husband's employment with two companies—McKinsey and Ajax. The third and fourth grounds related to the judge's financial holdings in diversified investment funds. The district court found that none of the evidence supported disqualification.

#### 1. The District Court Denied The Grounds In Cellspin's Motion That Relied On Attenuated Connections Between Google And The Judge's Husband's Employers.

The record contains no evidence that Judge Gonzalez Rogers' husband is employed by—or is directly affiliated in any other way with—Fitbit or any of its parent companies, including Google or Alphabet. The record is also devoid of evidence tying Mr. Rogers' employment with either McKinsey or Ajax to the subject matter in the underlying district court litigation, which involved Cellspin's allegations that Fitbit infringes patents directed to a particular way to use Bluetooth to transmit data. Thus, because Cellspin lacked any evidence connecting Mr. Rogers to an actual financial interest in either Fitbit or the underlying litigation, Cellspin's disqualification motion instead relied on indirect attenuated connections that attempt

to link Mr. Rogers' employers with third-party companies that allegedly have relationships with Google.

With regard to McKinsey, Cellspin's allegations relied on little more than McKinsey's use of Google Cloud—one of the top providers of cloud services in the world—in providing consulting services to its clients. *See* Appx0026 (Cellspin alleging that: "For an oil and gas client, McKinsey used Google cloud to improve refinery performance."). Cellspin specifically noted in its motion, and again emphasizes in its Blue Brief on appeal, that Judge Gonzalez Rogers acknowledged in her Senate Judiciary Committee questionnaire that she would potentially have to recuse herself from any case involving one of her husband's "primary clients" at McKinsey. *See* Appx0025; Blue Br. at 52. But the district court found that Cellspin "did not, *and cannot*, point to a single instance tying the [judge]'s husband to a Google project or partnership, including without limitation any related to Fitbit or a party in these proceedings. None exists." Appx0011 (emphasis in original). The district court explained that there is no evidence that "Google was a client, let alone a primary client or partner" of Mr. Rogers. *Id*. Furthermore, the judge stated that her husband "has not been a Senior Partner at McKinsey since July 31, 2021," which was eleven months before the summary judgment order issued. Appx0011.

Regarding Ajax, Cellspin's motion focused on two categories of third-party companies allegedly affiliated with Ajax. First, Cellspin alleged that Mr. Rogers

works with "three start-up companies funded by Google." Appx0029; *see also* Appx0029–0032. But Cellspin's evidence itself demonstrated that those three companies represent only a small subset of the many companies in which Google invests, Appx1132-1141, and that Google is one investor among others in each of those companies, Appx0141, Appx0174, Appx0178. Moreover, no evidence connects any money received by those companies—let alone money received from Google—to Mr. Rogers, to Fitbit, or to this patent infringement litigation.

Second, Cellspin identified five companies for which Mr. Rogers allegedly handled "strategic partnerships with Google." Appx0033. Cellspin alleged that those five third-party companies integrated their own technology with widely available Google platforms (*e.g.*, Google Maps, Google Nest, Google Cloud, Google Earth Engine). *See* Appx0033-0035. Even if Cellspin's allegations regarding the third-party companies were factually correct, they would, at most, suggest only attenuated and disjointed chains of connections between Mr. Rogers and Fitbit—specifically, that Mr. Rogers is employed by Ajax, Ajax has a financial interest in a certain third-party company, and the third-party company has some form of partnership with an entity that is affiliated with Fitbit. *See, e.g.*, Appx0033 ("Ajax Operating Partner Rogers has a financial interest in Lime. And Lime bases about half of its entire business model on Google. . . . Ajax Operating Partner Matt Rogers

has a financial interest in Voltus and Voltus has joint product partnership with Google.").

Importantly, however, the district court demonstrated that many of Cellspin's allegations regarding Ajax are factually incorrect. For example, the judge noted that Cellspin sought to create an inference that her husband had equity in Ajax based on his title "Operations Partner," but Cellspin was wrong because her husband "is a contractor for Ajax with no equity in any Ajax portfolio." Appx0012. The judge also denied Cellspin's "bald accusations" that her husband had any "interest or relationship" with six of the companies: Lime, Voltus, Streetlight Data, Descartes Lab, Regrow, and Ripple Foods. *Id.* She explained how her husband had an attenuated affiliation at most with Planet Labs, with no equity interest. *Id.* As for Natel, where Mr. Rogers serves on the board, the judge explained how Cellspin failed to provide any evidence of any relationship between Natel and Google and that she and Mr. Rogers are not aware of any Google investment in Natel. Appx0012-0013.

Ultimately, the district court found no evidence of any direct connection linking her husband or his employers to Fitbit or the underlying litigation. Thus, the court found that her husband's business relationships were not disqualifying "financial interests," and the court denied the disqualification motion on those grounds. Appx0010-0013.

### 2. The District Court Denied The Grounds In Cellspin's Motion That Relied On Diversified Investments That Are Not Specific To Fitbit.

Cellspin also contended that certain of Judge Gonzalez Rogers' investments require her disqualification from this case. Specifically, Cellspin identified two Vanguard index funds—the Vanguard 500 Index Fund and the Vanguard Total International Stock Index Fund—as well as the McKinsey & Company Special Situations Fund as alleged disqualifying financial interests in Fitbit.

The Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund are mutual funds registered under the Investment Company Act of 1940. Appx1166; Appx1268. Although it is undisputed that the funds currently include holdings in Alphabet Inc. (one of the parent companies of Fitbit), and some of the other defendants, it is also undisputed that both funds are, by design, large and diversified funds that hold interests in hundreds of stocks across all sectors of the economy. For example, the Vanguard 500 Index Fund holds investments in more than 500 individual stocks across all sectors of the economy, and it "seeks to track the investment performance of the Standard & Poor's 500 Index, an unmanaged benchmark representing U.S. large-capitalization stocks." Appx1296. Similarly, the Vanguard Total International Stock Index fund "tracks stock markets all over the globe," with investments in close to 8,000 stocks in different regions and markets. Appx1300-1304. The district court found that those two mutual funds "are prototypical examples falling into the safe harbors for mutual or common investment

funds" under Section 455(d)(4)(i). Appx0015. The judge confirmed that she "does not manage, direct, or control the funds' investments." *Id.* There is no evidence in the record that investors in these funds—including, for example, Judge Gonzalez Rogers—have any ability to direct their investments in particular assets within the fund, nor is there any evidence that investors obtain any ownership interest (*e.g.*, shareholder voting rights) in the underlying assets held by the funds. *See* Appx0015.

Regarding the Special Situations Fund, the district court noted that it "functions in essence like a mutual fund." Appx0017. The Special Situations Fund is managed by the McKinsey Investment Office, and Judge Gonzalez Rogers is an investor. *Id.* The judge does not participate in the management of the fund, she has "no knowledge or control of the investments being made," and she does "not directly own stocks." *Id.* The district court noted that investors in the Special Situations Fund "do not directly hold public stocks, do not have knowledge of the particular assets that the fund invests in, are denied access to that information when requested, and have no influence on the assets that are pursued." Appx0017–0018. Cellspin has speculated that "a huge portion of this opaque investment ***could be*** in Big Tech stocks like the defendants in this case," Appx0017 (emphasis added), but there is no actual evidence in the record that the Special Situations Fund invests in Fitbit or its parent entities. In fact, the district court relied on documentation from the McKinsey

Investment Office public website that it "does not trade individual stocks or bonds of any public or private company anywhere in the world." Appx0017.

The district court found insufficient evidence that the Vanguard index funds or the Special Situations Fund are disqualifying financial interests under the statute. Accordingly, the court denied Cellspin's disqualification motion on those grounds. Appx0014-0018.

## VI. SUMMARY OF THE ARGUMENT

1. Cellspin delayed filing its disqualification motion until long after it had access to the information upon which the motion is based, long after it lost on summary judgment, and long after it filed its notice of appeal from the district court's summary judgment order. Cellspin's decision to delay now presents this Court with two separate bases to dispose of part or all of this appeal as untimely.

a. First, because the first notice of appeal—from the district court's summary judgment order—divested the district court of its jurisdiction over the summary judgment order, this Court should affirm the district court's finding that it lacked the authority to grant Cellspin's request for vacatur of that order under Federal Rule of Procedure 60.

b. Second, because Cellspin strategically sat on its disqualification motion until after it lost on summary judgment, the Court should affirm the district court's finding that the motion can be denied as untimely.

2. The district court did not abuse its discretion in denying Cellspin's disqualification motion on the merits because Judge Gonzalez Rogers has no disqualifying "financial interest" in Fitbit or the underlying litigation.

a. Mr. Rogers has no direct relationship to Fitbit or to the underlying subject matter of the patent litigation dispute in this case. Cellspin attempted to create indirect connections with allegations about Mr. Rogers'

employers,[4] Ajax and McKinsey, and their alleged use of Google services in consulting for their clients, but the district court correctly rejected those arguments. On appeal, Cellspin reiterates its failed arguments about Ajax and McKinsey, and attempts to improperly shift the burden to the district court to disprove its baseless allegations. But, ultimately, Cellspin's unsupported speculation about attenuated connections is insufficient to demonstrate that the district court abused its discretion in denying the disqualification motion.

b. The district court did not abuse its discretion in finding that Judge Gonzalez Rogers' investments in diversified funds that are not specific to Fitbit are not disqualifying "financial interests" in Fitbit under 28 U.S.C. § 455(b)(4). The judge's investments in the Vanguard index funds are protected by the statutory safe harbor under § 455(d)(4)(i), which excludes "mutual or common investment funds" from the definition of "financial interest." And the Special Situations Fund is not a financial interest in Fitbit because the evidence demonstrates that the fund does not invest in individual stocks of companies, including Fitbit or its parent entities.

3. Even if there were a violation of 28 U.S.C. § 455 in this case (which there is not), Cellspin's request for retroactive relief—*i.e.*, vacatur of the summary

[4] The district court clarified that Mr. Rogers is a "contractor for Ajax with no equity in any Ajax portfolio." Appx0012.

judgment order—is inappropriate because the violation is harmless error with respect to the grant of summary judgment. All three harmless error factors weigh against vacating the summary judgment order. First, Cellspin suffers no injustice if the summary judgment order is not vacated because it is reviewed *de novo*, while Fitbit would suffer injustice if the summary judgment order is vacated after Cellspin strategically delayed in filing its disqualification motion. Second, the other defendants who are not parties to this appeal would suffer injustice if the summary judgment order is vacated. And third, the public will lose confidence in the judiciary if this Court decides that orders can be vacated based on unsupported allegations about attenuated spousal business relationships and generic investments in diversified funds. Because all three harmless error factors weigh against vacating, the extraordinary circumstances required to vacate of the summary judgment order under Federal Rule of Civil Procedure 60 do not exist here.

## VII. STANDARD OF REVIEW

Under Ninth Circuit law, a district court's denial of a motion for disqualification is reviewed for abuse of discretion. *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012). Additionally, the Ninth Circuit reviews a district court's denial of a motion under Federal Rule of Civil Procedure 60(b) for abuse of discretion. *Cardpool, Inc. v. Plastic Jungle, Inc.*, 817 F.3d 1316, 1321 (Fed. Cir. 2016) (citing *United States v. Asarco Inc.*, 430 F.3d 972, 978 (9th Cir. 2005)).

## VIII. ARGUMENT

### A. The District Court Correctly Denied The Relief That Cellspin Requested In Its Untimely Disqualification Motion.

Cellspin waited to file its disqualification motion until after it filed its notice of appeal from the district court's summary judgment order. That delay, alone, now presents this Court with at least two independent bases to dispose of part or all of this appeal. First, this Court should affirm the district court's finding that it lacked jurisdiction to vacate its summary judgment order. Second, this Court should affirm the district court's finding that Cellspin's disqualification motion should be denied as untimely under Ninth Circuit precedent.

#### 1. The District Court Correctly Determined That It Lacked Jurisdiction To Vacate Its Summary Judgment Order After Cellspin Had Already Filed A Notice Of Appeal.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. Here, Cellspin filed its notice of appeal from the district court's summary judgment order in July 2022, which divested the district court of its jurisdiction over that order. *See* Appx2307; *see Griggs*, 459 U.S. at 58. Accordingly, when Cellspin subsequently requested in its disqualification motion that the district court vacate its summary judgment order, the court correctly determined that it lacked the jurisdiction to do so. Appx0005–0006.

Cellspin now seeks to overturn that decision by the district court. Essentially, Cellspin asks this Court to declare that the district court abused its discretion in denying relief under Federal Rule of Civil Procedure 60.[5] Cellspin's request is nonsensical because the district court could not have abused its discretion in denying a motion to vacate an order that it did not have jurisdiction to vacate in the first place.

Cellspin's vacatur request is also inconsistent with Ninth Circuit and Federal Circuit precedent. For example, in *Shorter v. Baca*, the Ninth Circuit was faced with the same issue presented here—namely, a Rule 60 motion filed after a notice of appeal—and found that the district court did not abuse its discretion in denying the Rule 60 motion for lack of jurisdiction. Case No. 19-56182, 2021 WL 4958857, at *22 (9th Cir. Oct. 26, 2021) ("Nor did the district court abuse its discretion by denying Shorter's Rule 60(b) motion due to lack of jurisdiction. Shorter filed the Rule 60(b) motion almost two months after filing this appeal and sought to void the very orders over which we have jurisdiction." (citation omitted)); *see also Our Children's Earth Found. v. EPA*, 527 F.3d 842, 852 (9th Cir. 2008) ("The district court did not abuse its discretion in refusing to transfer claims to this court after the

---

[5] The district court noted that Cellspin's "vague gestures to Rule 60 in its motion fails to identify the precise basis upon which it relies to vacate the summary judgment," but "[e]ven though [Cellspin] is not pro se and is proceeding through counsel," the court "generously construe[d] counsel's motion as a request to vacate the judgment 'as void'" under Fed. R. Civ. P. 60(b)(4). *See* Appx0006.

notice of appeal had been filed."). The Federal Circuit has similarly found no abuse of discretion when a lower court declined to exercise jurisdiction after the filing of a notice of appeal. *See Melka Marine, Inc. v. United States*, 29 F. App'x 594, 598 (Fed. Cir. 2002) (nonprecedential) (finding that the Court of Federal Claims' denial of an EAJA attorney fee application was not an abuse of discretion when the application was untimely filed after the notice of appeal).

In short, the district court did not—and could not have—abused its discretion when it decided that it lacked jurisdiction to vacate its summary judgment order after the notice of appeal was filed. This Court should affirm that decision.

**2. The District Court Correctly Found That Cellspin's Untimely Disqualification Motion Should Be Denied Due To Gamesmanship.**

Cellspin did not file its disqualification motion in early 2021 when Fitbit provided notice that it had been acquired by Google. Instead Cellspin waited two additional years, during which time the district court granted summary judgment of noninfringement in favor of all defendants. In ruling on Cellspin's disqualification motion, the district court correctly found that Cellspin's delay provided sufficient basis for denial of the motion as untimely. Appx0007. This Court should affirm.

It is well established in the Ninth Circuit that "a recusal motion must be made in a timely fashion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992) (citing *Molina v. Rison*, 886 F.2d 1124, 1131 (9th Cir. 1989)). While there is no per se rule about a specific length of time, the motion "should be filed

with reasonable promptness after the ground for such a motion is ascertained." *Id.* (quoting *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991)). Here, Cellspin sat for an unreasonable time on the alleged evidence, including the judge's 2011 Senate Judiciary Committee questionnaire, the judge's 2020 financial disclosures, and publicly available information about the judge's husband's employment at McKinsey and Ajax. *See supra* Section V.B. Notably, Cellspin has not identified any event that occurred in the weeks or months preceding the filing of its disqualification motion that provided any new information or otherwise triggered the filing.[6] In other words, Cellspin could have brought its disqualification motion before the district court granted summary judgment, but it chose not to.

The district court correctly recognized Cellspin's choice as a strategic decision to try for a second bite at the apple after its loss on summary judgment. Appx0008 ("There is little doubt that filing the motion nearly seven months after judgment was entered and after an appeal has been substantially commenced is

---

[6] Cellspin makes a passing argument that the *Centripetal Networks, Inc. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022) decision excuses its delay in bringing its disqualification motion. *See* Blue Br. at 19 ("Cellspin had no way of knowing in 2021 or early 2022 that the Court of Appeals for the Federal Circuit would decide the *Centripetal* case regarding blind trusts the way it did."). That argument was properly rejected by the district court because the central question in *Centripetal*—*i.e.*, whether a blind trust constitutes divestment under § 455(f)—is not relevant in this case, which in no way involves blind trusts. Appx0008, n.6. Furthermore, that decision was published six months before Cellspin's disqualification motion, and Cellspin again provides no explanation for its delay.

gamesmanship."). Cellspin's gamesmanship runs afoul of the Ninth Circuit's timeliness requirement for disqualification motions, which "is necessary to prevent litigants from using § 455(a) for strategic purposes." *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018) (denying motion as untimely when the defendants were notified of the potential conflict, "yet they withheld their motion while the trial was ongoing and waited to file until after the jury's verdicts against them"); *see also Preston*, 923 F.2d at 733 ("The absence of such a [timeliness] requirement would result in increased instances of wasted judicial time and resources and a heightened risk that litigants would use recusal motions for strategic purposes.") (internal citations omitted). The Ninth Circuit has made clear that "a party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention." *United States v. Rogers*, 119 F.3d 1377, 1380-82 (9th Cir. 1997) (finding a disqualification motion untimely when not filed "until more than one and one-half years after he was aware of the grounds for disqualification – and almost nine months after his resentencing"). Yet that is precisely what Cellspin did here.

Cellspin attempts to overcome the untimeliness of its motion by arguing that when Google acquired Fitbit in February 2021, Cellspin did not immediately have access to ***all*** of the information upon which its motion is based. *See* Blue Br. at 18. Cellspin specifically points to Mr. Rogers' employment at Ajax which began in

April 2022 and its lack of access to Judge Gonzalez Rogers' 2021 and 2022 financial disclosures. *See* Blue Br. at 18. But Cellspin ***did*** have all of the information that it cited in its disqualification motion before the district court granted summary judgment in June 2022, and that is the relevant inquiry under Ninth Circuit law. Once Cellspin had the relevant information, Cellspin had no excuse for its choice to "s[i]t on the motion and strategically litigate[] this case through summary judgment," and then try to disqualify the judge to "secur[e] an unwarranted second bite at the apple." Appx0008–0009; *see also E. & J. Gallo*, 967 F.2d at 1295 (holding that the disqualification motion raised for the first time in a motion for a new trial was not timely and "[t]o hold otherwise would encourage parties to withhold recusal motions, pending a resolution of their dispute on the merits, and then if necessary invoke section 455 in order to get a second bite at the apple").

Moreover, any information that Cellspin acquired after February 2021 would not change the fact that it had access to the McKinsey-related information, as well as the judge's 2020 financial disclosures, immediately upon Fitbit's filing of its amended Rule 7.1 statement. Similarly, Cellspin's assertion about its lack of access to the judge's 2021 and 2022 financial disclosures[7] is pretextual because Cellspin's

[7] Cellspin asserts that the judge did not file financial disclosures for the years 2021 and 2022. Blue Br. at 18. The district court flatly denied that allegation in its opinion, explaining that she submitted her 2021 disclosure and that, at the time of the opinion, the 2022 deadline had not passed. Appx0002 n.3.

supposed uncertainty about whether the judge continues to hold the Vanguard index funds did not prevent Cellspin from asserting that she does in its motion.

Cellspin also argues that its untimeliness should be excused because Judge Gonzalez Rogers should have informed the parties when her husband joined Ajax in April 2022, citing the requirement in 28 U.S.C. § 455(c) that the judge remain informed about her financial interests and those of her spouse. Blue Br. at 19. But § 455(c) has no relevance to Cellspin's disqualification motion because there is no allegation that Judge Gonzalez Rogers herself was uninformed about her husband's employment at Ajax. And the statute contains no requirement—either in subsection (c), or anywhere else—that a judge must inform all parties in every case about her husband's business dealings in all matters. That is especially true when those business dealings, as here, have no connection to the underlying subject matter of the case.

In sum, the district court's finding that Cellspin's motion should be denied as untimely was correct. Cellspin's arguments to the contrary are not persuasive. This Court should affirm.

### B. The District Court Correctly Rejected Cellspin's Arguments On The Merits Because Judge Gonzalez Rogers Does Not Have A Disqualifying Financial Interest In Fitbit.

Cellspin failed to demonstrate that Judge Gonzalez Rogers has a disqualifying financial interest in any party in this litigation. The district court rejected Cellspin's

arguments based on irrelevant and indirect alleged connections between the district judge's husband's employers and Fitbit, which do not come close to meriting disqualification under 28 U.S.C. § 455. And the district court rejected Cellspin's arguments based on the judge's diversified investments in index funds and retirement plans that are not specific to Fitbit and thus do not constitute "financial interests" in Fitbit under the statute. Because the district court did not abuse its discretion, this Court should affirm.

**1. Judge Gonzalez Rogers' Husband's Business Relationships Do Not Warrant Disqualification.**

The district court did not abuse its discretion when it determined that Cellspin's allegations about Judge Gonzalez Rogers' husband's employers do not support disqualification. Mr. Rogers does not have—nor has he ever had—any direct connection to Fitbit or any of its parent entities, and certainly not one that would create a "financial interest" under 28 U.S.C. § 455(b)(4).

**a. Mr. Rogers Has No Direct Business Relationship With Fitbit Or Its Parent Companies.**

On issues concerning the business relationships of a judge's spouse, the Committee on Codes of Conduct has issued Advisory Opinion No. 107, which offers guidance on Canon 3C(1) of the Code of Conduct for United States Judges. *See*

Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Opinion No. 107 (June 2009).[8] As noted in the Advisory Opinion:

> Although the Committee is not authorized to render advisory opinions interpreting [28 U.S.C] §§ 455 and 144, Canon 3C of the Code closely tracks the language of § 455, and the Committee is authorized to provide advice regarding the application of the Code.

*Id.* at 210. At least one circuit court, and numerous district courts have looked to Advisory Opinion No. 107 for guidance in interpreting § 455. *See Garrett v. Ohio State Univ.*, 60 F.4th 359 (6th Cir. 2023); *Smith v. BP Exp. & Prod.*, No. 22-842, 2022 WL 17403568, at *4 (E.D. La. Dec. 2, 2022); *Ragozzine v. Youngstown State Univ.*, No. 13-750, 2014 WL 1153715, at *2 (N.D. Ohio Mar. 20, 2014).[9]

---

[8] "The Code of Conduct for United States Judges was adopted by the Judicial Conference of the United States in 1973. It prescribes ethical norms for federal judges as a means to preserve the actual and apparent integrity of the federal judiciary." *United States v. Microsoft Corp.*, 253 F.3d 34, 111 (D.C. Cir. 2001). The Federal Circuit has explained that it is "entitled to give some weight to the committee's views because Congress enacted § 455(b) to match Canon 3C of the Code of Judicial Conduct, which provides in relevant part that a judge 'shall disqualify himself in a proceeding' where he 'knows that he . . . or his spouse . . . has a financial interest . . . in a party to the proceeding,'" and to ensure that statutory and ethical duties were consistent with each other." *Centripetal*, 38 F.4th at 1032.

[9] Other circuit courts have favorably cited and relied on Advisory Opinions from the Committee in general. *See, e.g.*, *Centripetal*, 38 F.4th at 1032; *Doe v. Apple Inc.*, No. 21-7135, 2022 U.S. App. LEXIS 17918, at *3 (D.C. Cir. June 28, 2022); *Shao v. Roberts*, No. 21-5210, 2022 WL 566470, at *1 (D.C. Cir. Feb. 23, 2022); *Klayman v. Blackburne-Rigsby*, No. 21-7069, 2022 WL 298933, at *1 (D.C. Cir. Jan. 20, 2022); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1241 (10th Cir. 2020); *Shuler v. Duke*, 792 F. App'x 697, 706 n.6 (11th Cir. 2019); *Evans v. Stephens*, 387 F.3d 1220, 1228 n.14 (11th Cir. 2004); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 783 (3d Cir. 1992).

Advisory Opinion No. 107 makes clear that "[a]s a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal." Advisory Opinion No. 107 at 205–06. The Advisory Opinion provides examples of ***direct*** business relationships—*e.g.*, the judge's spouse "is an officer, director, or trustee of a party in the proceeding"—that are disqualifying. *Id.* at 205. But the Advisory Opinion specifically notes that "[r]ecusal is ***not*** mandatory in other situations involving ***spousal business relationships that are less direct or consequential***." *Id.* (emphasis added).

In this case, Mr. Rogers is not employed by Fitbit or its parent corporations, nor is he directly affiliated with those companies in any other way. To the extent Fitbit or its parent companies have had any indirect relationship with Mr. Rogers through his employers, McKinsey and Ajax, those relationships are highly attenuated and entirely unrelated to the underlying district court litigation in which Cellspin accused Fitbit of infringing its patents relating to Bluetooth tracking. Accordingly, Mr. Rogers' relationships with McKinsey and Ajax—as well as any relationships those companies allegedly have to Fitbit or its parent entities—are exactly the type of indirect and inconsequential relationships that do not require disqualification under Advisory Opinion No. 107. Those indirect and inconsequential relationships are discussed below.

#### b. Mr. Rogers' Employment At Ajax Has No Relevance To Judge Gonzalez Rogers' Obligations Under § 455.

The district court found that Cellspin's position based on Mr. Rogers' employment by Ajax "is frivolous, lacks any merit, and makes substantial misrepresentations of the record provided." Appx0012. In its Blue Brief, Cellspin recycles many of the same arguments that the district court found frivolous, and this Court should reject them too.

Cellspin's allegations regarding the eight so-called "Ajax companies"—three that Google allegedly funded and five that allegedly partnered with Google—are not sufficient to warrant disqualification. Looking again to Advisory Opinion No. 107, the Committee states:

> When a service provider's transactions with the judge's spouse or the spouse's business are in the regular course of business, routine in nature, and are unaccompanied by special circumstances suggesting that the selection of the spouse or the spouse's business may have been influenced by the judge's position, recusal is ordinarily not required.

Advisory Opinion No. 107 at 209. Here, any relationship that Google has to any of the eight Ajax companies is in the regular course of business, and there is no evidence in the record suggesting that Google elected to work with Ajax or any of these companies because Mr. Rogers is married to Judge Gonzalez Rogers.

With regard to the three companies in which Google invested, Cellspin has shown nothing special about the relationship between Google and Ajax or these companies. That reality is demonstrated by the fact Google was one of a number of

investors in each of the three companies (*i.e.*, these companies were not entirely funded by Google), as well as the fact that these companies represent only a small subset of the many companies in which Google invests (*i.e.*, Google did not specifically identify these three companies as distinct). *See* Appx1132–1141, Appx0141, Appx0174, Appx0178. In other words, Google's investment in these companies was "in the regular course of business, routine in nature, and [] unaccompanied by special circumstances." *See* Advisory Opinion No. 107 at 209. And Cellspin's unsupported speculation about Google's funding of these companies based on generic statements about "tranche investments," *see* Blue Br. at 24, does nothing to change that.

Similarly, for the five companies that allegedly partnered with Google, Cellspin's allegations, at most, suggest only that the five companies integrated their own technology with widely available Google platforms (*e.g.*, Google Maps, Google Nest, Google Cloud, Google Earth Engine). *See* Appx0033–0035. In other words, their relationship to Google was in the regular course of business and entirely routine in nature. *See* Advisory Opinion No. 107 at 209. Moreover, Judge Gonzalez Rogers flatly denied as untrue many of Cellspin's allegations regarding the five companies. For example, the judge represented that Mr. Rogers has "no equity in any Ajax portfolio." *See* Appx0012. Cellspin asserts based on general unsupported speculation about Silicon Valley startup companies that the judge's representation

"seems implausible," Blue Br. at 27, but Cellspin offers no evidence to support its allegation that the judge was either wrong or lying.

Ultimately, for six of the eight "Ajax companies"—Lime, Voltus, Streetlight Data, Descartes Lab, Regrow, and Ripple Foods—there is a complete lack of evidence that Mr. Rogers was personally involved or personally benefits from any relationship to Google. Appx0012-0013. She explained how her husband had an attenuated affiliation at most with Planet Labs, with no equity interest. Appx0012. As for Natel, where Mr. Rogers serves on the board, the judge explained how Cellspin failed to provide any evidence of any relationship between Natel and Google and that she and Mr. Rogers are not aware of any Google investment in Natel. Appx0012-0013.

The district court rejected Cellspin's argument that disqualification was required based on the allegations that Mr. Rogers is employed by Ajax; Ajax has a financial interest in certain third-party companies; and the third-party companies have some form of relationship with an entity that is affiliated with Fitbit. Cellspin has not demonstrated how or why the district court abused its discretion in making that reasonable finding. Accordingly, this Court should affirm.

#### c. McKinsey's Use Of Generic Google Technology Does Not Require Recusal.

With respect to Cellspin's allegations based on McKinsey, the district court noted that Cellspin's "evolving theory for recusal is nothing but unsubstantiated

speculation divorced from any evidence." Appx0010–0011. The court went on to find:

> Despite the substantial commentary available online that [Cellspin] leverages in its motion, [Cellspin] did not, *and cannot*, point to a single instance tying the undersigned's husband to a Google project or partnership, including without limitation any related to Fitbit or a party in these proceedings. None exists. Nor has [Cellspin] proffered any admissible evidence that Google was a client, let alone a primary client or partner, of the undersigned's husband and that he profited from such a relationship. No such evidence exists.

Appx0011. The district court did not abuse its discretion in making those findings.

Cellspin's arguments on appeal, like its arguments before the district court, amount to little more than an allegation that McKinsey uses Google cloud services, and/or other generic publicly offered Google services, in consulting for its clients. The fact that Google offers cloud services to McKinsey customers in the regular course of business is no more disqualifying than a bank offering services to a judge's spouse's business, which is an example in Advisory Opinion No. 107 of a business relationship that would not disqualify the judge. *See* Advisory Opinion No. 107 at 209.

In its Blue Brief, Cellspin attempts to create the illusion of specificity by focusing on Mr. Rogers' work with oil and gas clients, speculating that Mr. Rogers' "pay and bonus" depended on his oil and gas clients being satisfied with Google services because "[t]his is how partners and senior partners at consulting firms like McKinsey traditionally get compensated." Blue Br. at 51. But Cellspin's attempt

to limit the inquiry to oil and gas clients is arbitrary, and it falls well short of illustrating the special circumstances necessary to show a disqualifying financial interest—*e.g.*, that Google elected to work with McKinsey or Mr. Rogers' oil and gas clients because of Judge Gonzalez Rogers' judgeship. *See* Advisory Opinion No. 107 at 209.

Additionally, Cellspin continues its attempt to rely on Judge Gonzalez Rogers' statement in her 2011 Senate Judiciary Committee questionnaire that "primary clients" of McKinsey would likely require recusal. *See* Blue Br. at 52. But as the district court found, there is no evidence that Google was a "client" of Mr. Rogers at McKinsey, let alone a "primary client," nor is there any evidence tying Mr. Rogers to any "Google project or partnership." Appx0011. Thus, this Court should affirm the district court's finding that Mr. Rogers' employment at McKinsey does not require disqualification under 28 U.S.C. § 455.

#### d. Cellspin's Appellate Arguments Misrepresent The Law And Improperly Attempt To Shift The Burden To The District Judge To Produce Evidence To Disprove Its Speculative Allegations.

Cellspin's Blue Brief appears to make two general arguments about the district court's denial of its motion based on Mr. Rogers' business relationships. First, Cellspin repeatedly argues that the district court failed to present evidence to disprove Cellspin's allegations. *See, e.g.*, Blue Br. at 30 (arguing that the district court "had an opportunity to produced [*sic*] financial evidence about Matt Rogers'

Ajax involvements”); *id.* at 55 (“Judge Gonzalez Rogers had the opportunity to produce evidence such as a declaration from Matt Rogers himself . . . [b]ut she did not.”).[10] And second, Cellspin insists that its reliance on pure speculation should be excused because the statute requires only a showing of “perception” of bias. *See* Blue Br. at 16–17, 20. Both of those arguments misrepresent the law and are incorrect.

As to the first argument, it was Cellspin that had the burden of proof on its motion to disqualify Judge Gonzalez Rogers under 28 U.S.C. § 455. *See, e.g.*, *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1021 (8th Cir. 2010) (“A judge is presumed to be impartial, and ‘the party seeking disqualification bears the substantial burden of proving otherwise.’” (quoting *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006))). Cellspin’s attempt to shift that burden to the judge is unsupported by any legal authority. Moreover, such a burden shift would set a dangerous precedent that unsupported slander carries weight in a disqualification motion, particularly given that it is well established that litigants are not allowed to slander the judge. *Sacher v. United States*, 343 U.S. 1, 9 (1952) (“[I]f the ruling is adverse, it is not counsel’s right to resist it or to insult the judge.”); *Cobb v. United States*, 172 F. 641, 645 (9th Cir. 1909) (distinguishing a litigant’s right to

[10] Cellspin also faults Fitbit for not denying allegations about Google’s business relationships. Blue Br. at 22.

"criticize in a legitimate manner the conduct and rulings of the judge" from statements that are "false, scandalous, and libelous, and tended to degrade and insult the judge, and to impair the respect and authority of the court and bring it into disrepute").

In any event, Judge Gonzalez Rogers denied many of Cellspin's unsupported allegations. For example, the judge made clear that Google was not her husband's client at McKinsey, and that her husband has no equity position at Ajax. Appx0012. Cellspin essentially accuses the judge of lying—*e.g.*, "it is impossible for an objective person to believe," *see* Blue Br. at 25–26—which is improper, especially where Cellspin lacks evidence to rebut the judge's assertions. *Accord In re Judicial Misconduct*, 527 F.3d 792, 796–97 (9th Cir. 2008) ("A complaint of judicial misconduct is not a vehicle for a disappointed litigant to vent his anger by accusing judges of lying, taking bribes, fixing cases, falsifying records and committing other misdeeds for which complainant has not the least bit of evidence.").

Cellspin's second argument (about the "perception" of bias) fares no better. Notably, Cellspin's motion was opaque as to its legal basis—*i.e.*, § 455(a) versus § 455(b)(4). *See, e.g.*, Appx0026 (alleging a "financial interest" in Google, but also arguing about the "perception" of bias). On appeal, Cellspin insists that the standard is "perception," which is the standard only for § 455(a). *See Liteky v. United States*, 510 U.S. 540, 548 (1994) (explaining that § 455(a) requires "evaluation on an

objective basis, so that what matters is not the reality of bias or prejudice but its appearance"). In doing so, Cellspin implies that even if it failed to meet its burden to show a "financial interest" under § 455(b)(4), its motion should have nevertheless been granted under § 455(a) due to perceived bias. But the Ninth Circuit expressly rejected that interpretation of the relationship between § 455(a) and § 455(b). *Perry v. Schwarzenegger*, 630 F.3d 909, 915 (9th Cir. 2011) ("Congress gave careful consideration to the question of when a judge must recuse himself due to a relative's participation and, in § 455(b)(5), identified the specific circumstances in which a judge must do so. Section 455(a) cannot be read so broadly as to render that determination meaningless by proscribing under that provision what is permissible under § 455(b)(5).").

Equally problematic is Cellspin's suggestion that the "mere perception" standard excuses its reliance on speculation. That argument is fundamentally inconsistent with the Supreme Court's insistence that "it is critically important in a case of this kind to identify ***the facts***"—*i.e.*, not merely speculation—"that might reasonably cause an objective observer to question [the judge's] impartiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988) (emphasis added); *see also United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983) ("The test for disqualification under section 455(a) is an objective one: whether a reasonable person with knowledge of all ***the facts*** would conclude that the judge's

impartiality might reasonably be questioned." (emphasis added)). A reasonable person would not detect the appearance of bias based on "unsubstantiated allegations" that are contradicted by facts. *See Earles v. Sec'y of HHS*, No. 10-34, 2011 U.S. Claims LEXIS 901, at *23–24 (Fed. Cl. Apr. 22, 2011). Here, the district court correctly exercised its discretion to reject allegations that relied on "nothing but speculation and attenuation." Appx0013.

In sum, Cellspin's arguments on appeal fail to demonstrate that the district court abused its discretion in denying its disqualification motion based on Mr. Rogers' business relationships through Ajax or McKinsey. Accordingly, this Court should affirm the district court's denial of the motion on those bases.

### 2. The Judge's Diversified Investments Are Not Specific To Fitbit And Do Not Warrant Disqualification.

The district court did not abuse its discretion when it determined that Cellspin's allegations about Judge Gonzalez Rogers' financial investments do not compel disqualification. None of the investments that Cellspin identifies—*i.e.*, the Vanguard 500 Index Fund, the Vanguard Total International Stock Index Fund, and the Special Situations Fund—is a "financial interest" in Fitbit under 28 U.S.C. § 455(b)(4).

#### a. The Judge's Investments In Vanguard Index Funds Are Within The Statutory Safe Harbor For "Mutual Or Common Investment Funds."

Cellspin contended in its disqualification motion that Judge Gonzalez Rogers' investment in Vanguard index funds constitutes a "financial interest" in Fitbit under § 455(b)(4) because the Vanguard 500 Index Fund holds Alphabet Inc. stock.[11] The district court rejected that argument, and found that the Vanguard index funds are within the statutory safe harbor that explicitly excludes "mutual or common investment funds" from the definition of "financial interest." 28 U.S.C. § 455(d)(4)(i). In its Blue Brief, Cellspin recycles the same arguments that the district court rejected, and this Court should similarly reject them.

To start, both Vanguard index funds are registered with the SEC and sold as "mutual funds" under the Investment Company Act of 1940. Appx1166; Appx1268. Additionally, as the district court found, both funds "are prototypical examples falling into the safe harbors for mutual or common investment funds," based on the

[11] Throughout the Blue Brief, Cellspin conflates the two identified "Vanguard Index funds," but contends that only the Vanguard 500 Index Fund's holdings include Alphabet Inc. stock (or "Google Stock"). *See* Blue Br. at 40. The Vanguard Total International Stock Index Fund's holdings do not include Alphabet Inc., as it "seeks to track the investment performance of the FTSE Global All Cap ***ex US*** Index, an index designed to measure equity market performance in developed and emerging markets, ***excluding the United States***." Appx1307 (emphasis added).

criteria that have been laid out by the Committee on Codes of Conduct in Advisory Opinion No. 106.[12] Appx0015.

Advisory Opinion No. 106 begins with the overarching principle that "the Code should be interpreted to the extent reasonably possible to enable judges to invest in funds without transgressing the Code or engaging in a conflict of interest." Advisory Opinion No. 106 at 201; *see also United States v. Farkas*, 149 F. Supp. 3d 685, 698 (E.D. Va. 2016) ("The legislative purpose of this exception was to enable judges, like many Americans, to invest in securities without facing the threat of recusal in a large number of cases."), *aff'd* 669 F. App'x 122 (4th Cir. 2016); *Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*, 715 F.3d 501, 515–16 (4th Cir. 2013) ("Congress created this exception to enable judges to hold securities without risking recusal across a broad range of cases."). The Advisory Opinion sets forth six criteria for determining whether a fund is a mutual or common investment fund:

---

[12] Advisory Opinion No. 106 (like No. 107) concludes with the disclaimer that "[a]lthough the Committee is not authorized to render advisory opinions interpreting §§ 455 and 144, Canon 3C closely tracks the language of § 455 , and the Committee is authorized to provide advice regarding the application of the Code." Advisory Opinion No. 106 at 204. And again, at least one circuit court and numerous district courts have relied on the guidance set forth in Advisory Opinion No. 106. *See Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 55–56 (2d Cir. 2018); *Calderon v. Conagra Brands Inc*, No. 22-231, 2022 U.S. Dist. LEXIS 209970, at *2–3 (D. Neb. Nov. 18, 2022); *Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc.*, No. 12-355, 2015 WL 1283196, at *4 (D. Del. Mar. 18, 2015); *David v. GMAC Mortg., LLC*, No. 11-2914, 2011 WL 6078272, at *1 (N.D. Cal. Dec. 6, 2011).

> (1) the number of participants in the fund; (2) the size and diversity of fund investments; (3) the ability of participants to direct their investments; (4) the ease of access to and frequency of information provided about the fund portfolio; (5) the pace of turnover in fund investments; and (6) any ownership interest investors have in the individual assets of the fund.

Advisory Opinion No. 106 at 201. According to the Committee, "most mutual funds that are registered with the Securities and Exchange Commission and sold to the public as mutual funds will likely meet the criteria above." *Id*. at 201.

The Vanguard index funds at issue in this case are registered with the SEC and sold to the public as mutual funds. Appx1166; Appx1268. They are "extremely large" funds, Appx0015, each having millions of investors. They hold diverse investments in hundreds of stocks across all sectors of the economy. Appx1290, Appx1300–1301. Investors in the funds—including Judge Gonzalez Rogers—have no ability to direct their investments, nor do they have any ownership interest in the individual assets held by the funds. Appx0015. And Judge Gonzalez Rogers does not participate in management of the Vanguard index funds. Appx0015. Accordingly, under the criteria in Advisory Opinion No. 106, the Vanguard index funds are within the safe harbor—*i.e.*, they are statutorily excluded from the definition of a "financial interest."[13]

---

[13] A number of district courts have concluded that similar index funds qualify as "mutual or common investment funds" and judges who own shares in those index funds do not have a "financial interest" in the underlying holdings. *See, e.g.*, *David*,

Faced with this reality, Cellspin's only response—both in the district court and in its Blue Brief in this Court—is that the Vanguard index funds do not meet Cellspin's idiosyncratic definition of "regular Mutual funds." *See* Blue Br. at 41–43. Cellspin claims that these index funds are not within the safe harbor because they are "passively" managed, and thus Judge Gonzalez Rogers knows at any given time what stocks are held by each fund. *See id*. Tellingly, however, Cellspin offers no legal support for either its "passively managed" fund theory or its "knowledge of the holdings" test. The law is clear that mutual funds are in the safe harbor "unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i). There is no additional exception for "passively managed funds" or for judges who read an index fund's prospectus to learn what stocks it holds.

Furthermore, Cellspin's convoluted assertion that "[i]f nobody is managing the fund, then everybody is managing it," *see* Blue Br. at 43, is demonstrably false because the Vanguard index funds have portfolio managers—a fact Cellspin has ignored. *See* Appx1297; Appx1307. Judge Gonzalez Rogers does not participate in the management of either fund, and she has no ability to direct its investments. *See*

---

2011 WL 6078272, at *1 (Vanguard 500 Index Fund); *Pi-Net Int'l*, 2015 WL 1283196, at *4 (Vanguard Total Stock Market Index Fund); *Bank of Am., N.A. v. Martinson*, No. 10-10, 2013 WL 12234207, at *1 (W.D. Wis. Jan. 3, 2013) (Vanguard Institutional Index); *Huebner v. Midland Credit Mgmt.,* No. 14-6046, 2015 WL 1966280, at *3 (E.D.N.Y. May 1, 2015) (Ishares Russell 2000 Growth ETF).

Appx0015. Rather, Donald M. Butler and Michelle Louie are the portfolio managers for the Vanguard 500 Index Fund, *see* Appx1297, and Michael Perre and Christine D. Franquin are the portfolio managers for the Vanguard Total International Stock Index Fund, *see* Appx1307. The fund managers use "proprietary software to implement trading decisions that accommodate cash flow and maintain close correlation"—*i.e.*, not exact correlation—"with index characteristics." Appx1296; *see* Appx1307. And, at any given time, the number of stocks held by the Vanguard index fund may differ from the benchmark that it seeks to track. *See* Appx1293 (showing the Vanguard 500 Index Fund holds 506 stocks, as compared to the S&P 500 benchmark which has 503 stocks).

Cellspin attempts to analogize the Vanguard index funds at issue here to the blind trust that was at issue in this Court's decision in *Centripetal*. *See* Blue Br. at 43–45. But in *Centripetal*, the issue was direct ownership of Cisco stock and the question for the court was whether placing that stock in a blind trust constituted divestiture under § 455(f). *See Centripetal Networks, Inc. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022). Here, in contrast, § 455(f) is inapplicable because Judge Gonzalez Rogers never directly owned Alphabet stock.

Cellspin continues to insist that investing in a Vanguard index fund is no different from investing individually in each and every one of the individual stocks within the fund. Blue Br. at 44–45. But that is patently untrue, because an investor

in an index fund does not acquire the same ownership interests (*e.g.*, shareholder voting rights) as the owners of each stock. Appx0015. And Cellspin's theory—that an index fund is essentially a proxy for holding every one of the underlying stocks—cannot be correct because it would entirely swallow the express exception in the statute for mutual funds. Cellspin's theory is also logically incoherent because the very purpose of an index fund is to diversify—*i.e.*, to avoid investing in any one of the underlying stocks. *See, e.g.*, Appx1290 ("[T]he 500 Index Fund is a low-cost way to gain diversified exposure to the U.S. equity market. The fund offers exposure to 500 of the largest U.S. companies, which span many different industries."). Thus, far from creating a financial interest in the underlying Alphabet stock, Judge Gonzalez Rogers' investment in a Vanguard index fund effectively created a financial ***dis***interest in each one of the stocks in the fund, including Alphabet.[14]

Finally, unable to provide legal or factual support for its arguments based on the Vanguard funds at issue in this case, Cellspin invents a strawman fund to challenge. Specifically, Cellspin argues that, hypothetically, if there existed a fund called the "Top 5 Index Fund" that held Alphabet stock, a judge would not be

[14] Cellspin's reference to the amount of money that Judge Gonzalez Rogers has invested in the Vanguard funds, *see, e.g.*, Blue Br. at 40 ("between $9.4 to $43.5 million"), are also irrelevant. *New York City Housing Dev. Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986) ("§ 455(d)(4)(i) eliminates any inquiry into the size of the likely effect of a decision on the value of securities held through a mutual fund.").

allowed to invest in such a fund and still preside over a case involving Fitbit. Blue Br. at 50. Even if that were true, that argument is irrelevant because no such fund exists, and certainly no such fund is at issue in this case. Moreover, Cellspin's analogy does not hold water because that fictional fund would be fundamentally different from the actual Vanguard funds at issue in this case; in particular, it would lack the size and diversity of investment that is a crucial distinguishing characteristic of the Vanguard index funds.[15]

At bottom, the Vanguard index funds are prototypical examples of investments that fall within the statutory safe harbor. Accordingly, the Court should affirm the district court's finding that they do not constitute disqualifying financial interests.[16]

[15] While not at issue in this appeal, the Advisory Opinion No. 106 discusses "sector" or "industry" funds that may "specialize in an industrial sector," concluding that "such funds normally should be treated as mutual or common investment funds under the Code." Advisory Opinion No. 106 at 203. A judge invested in such a fund would only be required to recuse if the fund "could be affected substantially by the outcome of the proceeding." *Id*. Here, there is no allegation that the owners of the Vanguard index funds have interests that are substantially affected by the outcome of Cellspin's suit against Fitbit.

[16] Here again, Cellspin attempts to incorrectly argue about the judge's "financial interests" under § 455(b)(4) and § 455(d)(4)(i), while invoking the "perception" standard of § 455(a). Blue Br. at 49-50. As explained above, *see supra* Section VIII.B.1.d, the Ninth Circuit rejected that improper alternative approach to interpreting § 455(a) and § 455(b). *See Perry*, 630 F.3d at 915.

### b. The Judge's Investment In The Special Situations Fund Is Not A Disqualifying "Financial Interest."

To meet its burden under § 455(b)(4), Cellspin had to show that the judge has a financial interest in one of the parties in this litigation. Cellspin identified the Special Situations Fund as an alleged financial interest, but offered no evidence that the Special Situations Fund invests in Fitbit or any of its parent entities. And the record contains no evidence connecting the Special Situations Fund to Fitbit in any other way.

The evidence in the record suggested that the Special Situations Fund does not invest in Fitbit or any of its parent entities. Cellspin speculated in its motion—without a shred of evidence—that "a huge portion of this opaque investment ***could be*** in Big Tech stocks like the defendants in this case." Appx0044 (emphasis added). But the district court judge herself cited evidence from the MIO's public website that it "does not trade individual stocks or bonds of any public or private company anywhere in the world." Appx0017 (reviewing the MIO's public website). In view of that evidence, the district court did not abuse its discretion in finding that the judge's investment in the Special Situations Fund was not a financial interest ***in Fitbit***.

On appeal, Cellspin's primary argument about the Special Situations Fund is that it is "not a proper investment" under Section 455(d)(4)(i). Blue Br. at 37. That argument, however, is nonsensical because the statute does not classify investments

as either "proper" or "improper." Cellspin implies that § 455 operates to prevent judges from holding investments other than mutual or common investment funds, but that is incorrect because the statute is not directed to judges' general financial investments. Rather, the statute governs situations in which a judge must recuse herself from a particular case because an investment constitutes a financial interest in one of the parties in that case. *See* § 455(b)(4). If, and only if, the judge holds an investment that would constitute a financial interest in a party, the safe harbor then can apply to exclude certain types of investments from the definition of "financial interest." § 455(d)(4)(i).

Here, Cellspin flips the law on its head by directing its argument only at the safe harbor. Cellspin never demonstrates—or even attempts to demonstrate—that the Special Situations Fund had any connection to Fitbit such that it could be considered a "financial interest" under § 455(b)(4) in the first place. *See, e.g.*, *N.Y.C. Housing*, 796 F.2d at 977–80 (rejecting the argument that ownership interest in "trusts that included municipal bonds" created a financial interest when "neither plaintiff is a trustee for any of the trusts, and none of the trusts holds any of the bonds sought to be redeemed [in the pending litigation]"). Thus, notwithstanding Cellspin's attempts to characterize the Special Situations Fund as a "Hedge Fund" generally, *see* Blue Br. at 38, it is not a disqualifying financial interest in Fitbit under the statute.

Additionally, even if Cellspin had offered evidence of a connection between the Special Situations Fund and Fitbit (which it did not), the Special Situations Fund is within the statutory safe harbor under § 455(d)(4)(i). The district court correctly noted that the Special Situations Fund "functions in essence like a mutual fund." Appx0017. And, based on the information that Judge Gonzalez Rogers introduced into the record, the Special Situations Fund meets many of the criteria set forth in Advisory Opinion 106. For example, the fund has a large number of participants because it "invests the retirement assets for the global McKinsey pension plans." Appx0017. It also has a large portfolio of diverse investments: "Macro trading strategies involve trading in major asset classes such as sovereign debt, commodities, foreign exchange, equity indices, and credit indices." *Id.* The participants in the fund, including Judge Gonzalez Rogers, have no ability to direct their investments. *Id.* ("The [Judge] has no knowledge or control of the investments being made. The only choice is deciding how much to invest."). And the individual "investors such as the [judge] do not directly own stocks" and thus do not acquire ownership interests in the underlying assets held by the fund. *Id.* Accordingly, to the extent the Special Situations Fund would otherwise be a "financial interest" under § 455(b)(4), it is excluded under the safe harbor of § 455(d)(4)(i).

Cellspin's Blue Brief attempts to distract from the lack of relevant evidence about the Special Situations Fund by asserting facts and arguments about the Special

Situations Fund that have no bearing on any of the issues in this case. For example, Cellspin analogizes to a confirmation proceeding for an executive branch appointee who divested her interest in the Special Situations Fund due to a conflict of interest, Blue Br. at 32–34, but the analogy fails because Judge Gonzalez Rogers is statutorily governed by § 455 and executive branch appointees are not. Additionally, the question whether Judge Gonzalez Rogers is disqualified in this particular case is not analogous to an executive branch appointee who divested from an investment that admittedly created a general ongoing conflict of interest in the position to which she was appointed.

As another example, Cellspin raises allegations about misconduct within the management of the Special Situations Fund. Blue Br. at 38–39. The Court should lend no weight to those allegations because they are based on new evidence that was not in the record before the district court. *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000) ("not[ing] that the record on appeal is generally limited to that which was before the district court" and refusing "to expand the record on appeal where, as here, the party seeking expansion of the record offers no reasonable basis for its failure to produce the preferred evidence at an earlier time"); Fed. R. App. P. 10(a). And, in any event, the allegations of misconduct are irrelevant because they have nothing to do with the judge, her decision to invest in the fund, or whether her investment in the fund constitutes a

financial interest in one of the parties in this litigation. Cellspin had no legitimate reason to raise these allegations, which serve no purpose other than to cast aspersions on the judge by misleadingly suggesting that her decision to invest in a retirement fund through her husband's employment indicates involvement in questionable financial dealings.

As a third example, Cellspin nonsensically argues that the judge's alleged error in identifying the name of the Special Situations Fund in her financial disclosure warrants disqualification. *See* Blue Br. at 34. Even if the fund were incorrectly identified (which remains unproven), the record contains no evidence that the misidentification resulted from anything other than a clerical error. And Cellspin's position that the result of such an error should be the mandatory disqualification of the judge from this case—and by logical extension of Cellspin's argument, mandatory disqualification from every case—is an unsupported, illogical, and dangerous proposition.

In sum, the district court did not abuse its discretion in finding that the Special Situations Fund is not a disqualifying "financial interest" under § 455(b)(4). This Court should therefore affirm.

### C. The District Court Correctly Rejected Cellspin's Request For Retroactive Relief Under Federal Rule of Civil Procedure 60.

For the reasons explained above, the district court lacked jurisdiction to grant Cellspin's request for relief under Federal Rule of Civil Procedure 60, and the district

court correctly determined that there is no violation of 28 U.S.C. § 455 in this case. However, if this Court were to reach the opposite conclusion on the above issues, the district court did not abuse its discretion when it found that "no . . . extraordinary circumstances exist to void the judgment" in this case. Appx0007.

In instances of a violation of 28 U.S.C. § 455, the statute mandates only the ***pro***active remedy of disqualification. With regard to ***retro***active remedies for decisions already made by the judge, the statute is silent. The Supreme Court, however, has weighed in and made clear that "there need not be a draconian remedy for every violation of § 455(a)." *Liljeberg*, 486 U.S. at 862. Here, the retroactive relief that Cellspin requests—*i.e.*, vacating the summary judgment order—would be inappropriate.

To start, Cellspin's Blue Brief repeatedly asserts that the standard is the "perception" of bias, suggesting that its challenge is primarily under § 455(a). *See Liteky*, 510 U.S. at 548. At least one circuit court has held that under § 455(a), retroactive relief from orders issued before the recusal motion—*e.g.*, the summary judgment order—would be categorically unavailable. *See, e.g.*, *United States v. Murphy*, 768 F.2d 1518, 1539–41 (7th Cir. 1985) ("In cases decided under § 455(a), disqualification runs from the time the motion was made or granted. . . . [R]ecusal does not retroactively invalidate judicial acts that preceded the motion. . . ."), *cert. denied*, 475 U.S. 1012 (1986).

Even to the extent Cellspin's challenge is under § 455(b)(4), the summary judgment order should not be vacated because any § 455 violation was harmless error. *Liljeberg*, 486 U.S. at 863 ("As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance."). In *Liljeberg*, the Supreme Court set forth the three harmless error factors that apply in considering whether to vacate a judgment under Rule 60 in view of a § 455 violation: (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 863. Here, each of the three factors weighs in favor of finding harmless error, and against vacating the summary judgment order.

Beginning with the first harmless error factor (risk of injustice to the parties in this case), the risk to Cellspin from not vacating the summary judgment order is nonexistent because that order will be reviewed *de novo* by the Federal Circuit. *See Centripetal*, 38 F.4th at 1034 & n.11 (citing multiple circuit courts for the proposition that the first factor weighs in favor of harmless error "where the ruling involves a pure question of law that is subject to plenary review on appeal"). Cellspin argues that it will suffer injustice because the summary judgment order is "clearly erroneous," but that argument has nothing to do with the disqualification issues, and Cellspin already has the opportunity to challenge the merits of the

summary judgment order in its first appeal. *See generally* Case No. 22-2025, ECF No. 57. While Cellspin will suffer no injustice if the summary judgment order is not vacated, Fitbit on the other hand would suffer grave injustice from vacating the summary judgment order after Cellspin sat on its disqualification motion throughout the summary judgment process and then moved to disqualify the judge. Appx0008–0009. Accordingly, the first harmless error factor weighs heavily against vacating the summary judgment order.

Moving to the second factor (risk of injustice to parties in other cases), Cellspin asks in this appeal that the summary judgment order be vacated as to all of the defendants, *see* Blue Br. at 58–59, even though Cellspin has appealed only with respect to Fitbit.[17] The other defendants have not had a chance to defend themselves in this appeal, and they would suffer injustice from vacating summary judgment that was granted in their favor.

The third harmless error factor (risk of undermining the public's confidence in the judicial process) also weighs heavily against vacating the summary judgment order. A finding that Cellspin's allegations are sufficient to vacate a judgment would have a chilling effect on judges and their spouses. This case is not like *Centripetal*,

[17] Nikon Americas, Inc. and Nikon, Inc. have been included in this appeal, but the other defendants who were awarded summary judgment—Nike, Inc., Under Armour, Inc., Fossil Group, Inc., and Garmin International, Inc.—have not.

where the Federal Circuit found that the judge's decision to preside despite his wife's direct ownership of stock was "symptomatic of an increasingly common problem" of "many judges presiding over cases in which they or relevant family members owned stock in a party." *See Centripetal*, 38 F.4th at 1038–39. Here, Judge Gonzalez Rogers undisputedly does not own stock in one of the parties; rather she invested in funds that ensure no direct ownership interest. A finding that such investments disqualify the judge and provide a do-over for the losing party could have sweeping consequences for the United States judicial system because, under Cellspin's view, any judge who "place[es] money into an Index fund" would have "a direct financial interest" in publicly traded corporations. Appx0022. Such judges would then be unable to preside over cases involving companies such as Alphabet or its subsidiaries because, according to Cellspin, "Google is a major proportion of any Index Fund." Appx0024. Moreover, Cellspin's allegations, extended to their conclusions, would prevent judges and their spouses from using or being involved in businesses that utilize tech products. It is easy to see the short-term problems that such a framework would create in finding judges to preside over cases involving publicly traded corporations, as well as the long-term problems of finding suitable candidates for the federal bench. Vacating the summary judgment would inevitably call into question decisions issued by many—likely hundreds—of judges around the country who have presided over cases involving tech companies simply because they

have diversified investments, or because their spouses are involved in ordinary businesses that engage with tech companies.

In sum, because any violation of 28 U.S.C. § 455 in this case would be harmless error, Cellspin cannot meet the Supreme Court's requirement that a movant for relief under Rule 60 must "show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Accordingly, this Court should affirm the district court's denial of Cellspin's request to vacate the summary judgment order.

## IX. CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order denying Cellspin's motion for relief under 28 U.S.C. § 455 and Federal Rule of Civil Procedure 60.

Dated: July 17, 2023

Respectfully submitted,

/s/ *Karim Z. Oussayef*
Karim Z. Oussayef
Jamie L. Kringstein
Raymond N. Habbaz
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
koussayef@desmaraisllp.com
jkringstein@desmaraisllp.com
rhabbaz@desmaraisllp.com

Adam Steinmetz
DESMARAIS LLP
1899 Pennsylvania Ave NW, Suite 400
Washington, D.C. 20006
Telephone: (202) 451-4900
Fax: (202) 451-4901
asteinmetz@desmaraisllp.com

*Counsel for Defendant-Appellee*
*Fitbit LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2023, I served a complete copy of the foregoing on all counsel of record by filing it with the United States Court of Appeals for the Federal Circuit using the CM/ECF system.

Dated: July 17, 2023

Respectfully submitted,

/s/ *Karim Z. Oussayef*

Karim Z. Oussayef
koussayef@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

*Counsel for Defendant-Appellee*
*Fitbit LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation set forth in Fed. Cir. R. 32(a) and Fed. R. App. P. 32(a)(7)(B). Excluding exempt portions, this brief contains 13,082 words as counted by Microsoft Word for Microsoft 365, the word-processing system used to prepare this paper. This brief's total word count, excluding exempt portions, complies with the 14,000-word limit set by Fed. Cir. R. 32(a).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 and 14-point Times New Roman type.

Dated: July 17, 2023

Respectfully submitted,

/s/ *Karim Z. Oussayef*
Karim Z. Oussayef
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
koussayef@desmaraisllp.com

*Counsel for Defendant-Appellee*
*Fitbit LLC*