2023-1526

---

# United States Court of Appeals for the Federal Circuit

CELLSPIN SOFT, INC.,

*Plaintiff-Appellant,*

v.

FITBIT LLC; NIKON AMERICAS, INC.; and NIKON, INC.,

*Defendants-Appellees.*

---

*Appeal from the United States District Court for the Northern District of California in case nos. 4:17-cv-05928-YGR and 4:17-cv-05936-YGR Judge Yvonne Gonzalez Rogers*

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

August 7, 2023

*/s/ Randall Garteiser*
Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548

**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Attorneys for Plaintiff-Appellant*
CELLSPIN SOFT, INC.

# <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel for the Plaintiff-Appellant certifies the following, pursuant to Federal Circuit Rule 47.4:

(i)     The full name of every entity represented by me in this case is:

Cellspin Soft, Inc.

(ii)     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

(iii)     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the entity represented by me are:

N/A

(iv)     The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court, are:

**COLLINS EDMONDS & SCHLATHER, PLLC**
John J. Edmonds
Shea N. Palavan
Brandon G. Moore

(v)    Other than the originating case number(s), the title and number of any cases known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

*Cellspin Soft, Inc. v. Fitbit, Inc.*
Federal Circuit Appeal 2022-2025

*Cellspin Soft, Inc. v. Nike Inc.*
Federal Circuit Appeal 2022-2028

*Cellspin Soft, Inc. v. Under Armour, Inc.*
Federal Circuit Appeal 2022-2029

*Cellspin Soft, Inc. v. Fossil Group, Inc.*
Federal Circuit Appeal 2022-2030

*Cellspin Soft, Inc. v. Nikon Americas, Inc.*
Federal Circuit Appeal 2022-2032

*Cellspin Soft, Inc. v. Garmin, Int'l, Inc.*
Federal Circuit Appeal 2022-2037

Date: August 7, 2023                    */s/ Randall Garteiser*
                                        Randall Garteiser

# TABLE OF CONTENTS

I.      BRIEF INTRODUCTORY RESPONSE..................................................1

II.     FITBIT CANNOT OVERCOME 28 USC §455(A) ..........................................3

III.    FITBIT CANNOT OVERCOME 28 USC §455(B) ..........................................9

     A.      The Vanguard Index Fund
        Is Not A Safe Harbor ..................................................9

     B.      The Compass Special Situations Hedge Fund
        Is Not A Safe Harbor ................................................ 12

IV.     THE GOOGLE BUSINESS RELATIONSHIP
    Is Dispositive ........................................................ 14

     A.      The Ajax Relationship
        With Google Requires Recusal.................................... 14

     B.      The McKinsey Relationship
        With Google Requires Recusal.................................... 17

V.      THE DISTRICT COURT'S JURISDICTION ................................. 18

VI.     CELLSPIN'S RECUSAL MOTION WAS TIMELY ....................... 19

VII.    FAILURE TO VACATE IS PLAINLY
    NOT HARMLESS ERROR.......................................................... 21

VIII.   DEFENDANT NIKON IS A PROPER APPELLEE ......................... 24

## <u>TABLE OF AUTHORITIES</u>

*Ashley v. Moore,*
    2023 WL 4247201 (C.D. Cal. June 15, 2023)..............................................5

*Liljeberg v. Health Services Acquisition Corp.,*
    486 U.S. 847 (1988)........................................................................ 1, 3, 4, 7

*Liteky v. U.S.,*
    510 U.S. 540 (1994).....................................................................................4

*Perry v. Schwarzenegger,*
    630 F.3d 909 (9th Cir. 2011) ......................................................................4

*Preston v. United States,*
    923 F.2d 731 (9th Cir. 1991) ......................................................................6

*Sundby v. Marquee Funding Group,*
    2023 WL 4281729 (S.D. Cal. June 29, 2023) ...................................... 5, 8

*United States v. Carey,*
    929 F.3d 1092 (9th Cir. 2019) ............................................................ 5, 8

*United States v. Holland,*
    519 F.3d 909 (9th Cir. 2008) ............................................................. 4, 6

*United States v. Rogers,*
    119 F.3d 1377 (9th Cir. 1997) ............................................................. 20

*United States v. Sierra Pacific Industries, Inc.,*
    862 F.3d 1157 (9th Cir. 2017) ...................................................................7

*Williams v. Woodford,*
    384 F.3d 567 (9th Cir. 2004) ............................................................... 18

## I.    BRIEF INTRODUCTORY RESPONSE

By way of its Red Opposition Brief, Fitbit goes to great lengths, and devotes a great number of pages, cheerleading the self-serving effort on the part of the District Court to explain away and justify its own failure to recuse itself in light of the unambiguous objective language of 28 U.S.C. §455(a).  Indeed, Fitbit's Red Brief spends virtually zero time discussing §455(a), choosing instead to focus its energies on the subjective standards of §455(b) and the technical maze through which plain and obvious substantial financial interests in Google (and Fitbit) are swept under the rug.

Nevertheless, and notwithstanding the fact that Cellspin offers substantial evidence establishing actual material financial conflicts among both Judge Gonzalez Rogers and her husband under §455(b), the threshold facts giving rise to the reasonable doubt of impartiality under §455(a) are not in dispute.  As such, this Court must ensure that the fundamental purpose of §455 is preserved and, as stated by the Supreme Court of the United States: "Justice must satisfy the appearance of justice." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864 (1988).  Further to this point, Chief Justice Roberts has spoken on the need for the judiciary to self-regulate itself as a means of preserving its reputation of impartiality.  In short, and absent effective internal checks and balances, it is foreseeable that Congress may enact strict limitations which will operate to undermine the independence of the

judiciary.  As such, the instant appeal is far bigger than just Cellspin being unhappy with a ruling.

From an objective standpoint, at the time Google filed notice with the District Court of the change in ownership of Fitbit, Judge Gonzalez Rogers should have *sua sponte* recused herself or at the very least recused herself when her husband joined venture capital firm Ajax as an operating partner.  She obviously failed to do so; now, Cellspin asks this Court on appeal to preserve public trust and deliver a clear message to the judiciary that if it looks this bad, recusal is the only proper response.  Instead, the District Court went out of its way to label Matt Rogers as a mere independent contractor of Ajax.  Of course, the only information available to the interested public shows otherwise; Matt Rogers was identified as a Director on the Board of Directors, a role important enough to the Ajax start-up that he is listed with Securities and Exchange Commission.

Being appointed for life is a privilege, not a right to never be questioned.  Here, the District Court has literally and figuratively "moved the goal post" away from the objective to the subjective.  In any event, the objective standard under §455(a) is practically conceded by Fitbit and, as a result, there is no need to establish actual bias via discovery into the finances of Judge Gonzalez Rogers.  The Court chose not to provide an updated financial disclosure as a means of obtaining a waiver from Cellspin.  What is telling is that Google has had the opportunity to deny the

substantial facts twice but it has not done so.  No document of record includes any denial of any of the identified Ajax investments.  Fitbit (Google) has not denied any of the five ongoing strategic partnerships with Ajax companies.  Google has not denied that its investment are not tranche investments.  Google has not denied McKinsey "sells" Google cloud services to McKinsey Oil and Gas clients.  Google has not confirmed that the MIO Special Situation Fund does not hold any Google Stock. There has been no declaration from Matt Rogers or from Google, and Judge Gonzalez Rogers has simply declared as fact the idea that Ajax has received no money from Google (a conclusion which is unsupported by the evidence of record).

The facts of this case, taken objectively, require recusal under §455(a).  Once established, this Court needs not further evaluate whether an actual financial interest exists in the Gonzalez Rogers household under Section 455(b).

## II.    FITBIT CANNOT OVERCOME 28 USC §455(a)

There is no serious effort on the part of Fitbit to argue that a "reasonable appearance of partiality" on the part of Judge Gonzales Rogers does not exist.  This is the fundamental and overarching point of Cellspin's Recusal Motion, yet the District Court (and now Fitbit) redirects all attention and argument to a subjective standard which does not exist in §455(a).  Although obvious on its face, the Supreme Court has itself made clear that "[s]cienter is not an element of a violation of §455(a)." *Liljeberg,* 486 U.S. at 859.  As such, the details and technicalities which

might otherwise escape the parameters of §455(b) are immaterial to recusal in light of the "objective test based on public perception" of §455(a). *U.S. v. Holland,* 519 F.3d 909, 913 (9th Cir. 2008) (describing the goal of §455(a) as: "[T]o avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists") (*citing Liljeberg,* 486 U.S. at 860).

As to this point, Fitbit argues that satisfaction of the subjective bounds of §455(b) precludes an objective question of impartiality under §455(a). *See* Red Br. at 36-37 (discussing *Perry v. Schwarzenegger*, 630 F.3d 909 (9th Cir. 2011)). According to Fitbit, the Ninth Circuit has purportedly rejected the notion that recusal under §455(a) can be proper if the technicalities of §455(b) are otherwise satisfied. But such an application of *Perry* is incorrect, inasmuch as *Perry* itself relies on *Liteky v. U.S.,* 510 U.S. 540 (1994) and its discussion of the "extrajudicial source doctrine." In sum, both *Perry* and *Liteky* simply stand for the proposition that one cannot read §455(a) to prohibit that which is otherwise expressly permitted under §455(b). Of course, §§455(a) and (b) have different purposes and provisions, with §455(a) mandating disqualification "in any proceeding in which impartiality might reasonably be questioned, and §455(b) setting forth *additional circumstances* in which disqualification is mandatory, including personal bias or prejudice toward a

party or personal knowledge of disputed evidentiary facts concerning the proceeding." *Ashley v. Moore,* 2023 WL 4247201 at * (C.D. Cal. June 15, 2023) (emphasis added).  Stated differently, §455(a) "covers circumstances that *appear* to create a conflict of interest, whether or not there is actual bias; §455(b) covers situations in which an *actual* conflict of interest exists, even if there is no appearance of one." *Herrington v. Sonoma County,* 834 F.2d 1488, 1502 (9th Cir. 1987) (emphasis in original).  Still further, §455(b) "describes situations that create an *apparent* conflict, because it provides examples of situations in which a judge's 'impartiality might reasonably be questioned' pursuant to §455(a)." *Id.*  Yet still further, as the Ninth Circuit has recognized, a proper analysis under §455(a) requires an assessment of the *cumulative* effects of the known facts, even if *individually* not dispositive. *Sundby v. Marquee Funding Group,* 2023 WL 4281729 at *8 (S.D. Cal. June 29, 2023) (citing *United States v. Carey,* 929 F.3d 1092, 1104 (9th Cir. 2019)).  The approach suggested by Fitbit turns §455 on its head and effectively eliminates §455(a) as superfluous.

Here, however, Cellspin makes no such impermissible argument.  Again, and as set forth in Cellspin's Blue Brief, the publicly available known facts upon which an objectively reasonable person might question the impartiality of Judge Gonzalez Rogers under §455(a) include at least the following: (i) Judge Gonzalez Rogers has at least a $9.4 Million, and as much as a $43 Million, investment in the Vanguard

500 Index Fund and Vanguard Total International Stock Index Fund; (ii) Judge Gonzalez Rogers has at least a $5 Million, and as much as a $25 Million, opaque investment in the MIO Special Situations Fund ; (iii) Matt Rogers is an operating partner at Ajax Strategies; (iv) Google is part of a $700 Million investment in Ajax Strategies' portfolio companies; (v) multiple Ajax portfolio companies are directly funded by Google and/or have ongoing partnerships with Google; (vi) Matt Rogers was a senior partner at McKinsey for more than ten (10) years for its Oil and Gas clients, and sells Google services to such clients; and (vii) McKinsey has an ongoing business partnership and alliance with Google.  *See* Blue Br. at 6-9.

First, *all* of these facts are established in the record, and *all* such facts are extrajudicial in nature.  Indeed, Cellspin has not argued that Judge Gonzalez Rogers' adverse rulings alone warrant recusal, as such arguments (while relevant and illustrate the resulting harm to Cellspin) are properly resolved on appeal rather than as a foundation for recusal.  The fact that Cellspin relies upon publicly available information provides a proper source from which the "reasonable person with knowledge of all the facts would conclude that the Judge's impartiality might reasonably be questioned."  *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008); *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991).  Of course, the "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." *Holland,* at 913.  Moreover,

and as the Supreme court recognized in *Liljeberg,* "The problem … is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges.   The very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.   Thus, it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [the Judge's] impartiality." *Liljeberg,* 486 U.S. at 864-65.

Second, Fitbit cites to no authority for the proposition that the District Court can supplement the factual record with its own personal subjective understandings and thereby substitute the knowledge of the "reasonable observer" with its own.   In effect, the District Court erroneously applied a subjective standard to the objective rule set forth by §455(a), thereby removing the "reasonable observer" from the equation entirely.   Indeed, if the sitting Judge is herself the hypothetical "reasonable observer" upon whom the decision concerning perceived impartiality is placed, then the public policy objectives of §455 cannot be satisfied and the intentional distinctions as between §455(a) and §455(b) are erased.   *United States v. Sierra Pacific Industries, Inc.,* 862 F.3d 1157, 1174 (9th Cir. 2017) ("The test for recusal under these provisions is an objective test based on public perception"); *see also* Advisory Opinion 82 (affirming application of the rule which is based solely on public perceptions and facts as known to the public at large, rather than non-public

facts as may be known by the Judge: "The judge should not join an organization if the judge perceives there is any other ethical obligation that would preclude such membership.  For example, if the organization takes public positions on controversial topics, association with the group might raise a reasonable question regarding the judge's impartiality.  The judge should bear in mind that the public will normally be uninformed of any restriction or qualification that the judge may have placed on affiliation with the organization").

Third, and as noted *supra*, a proper analysis under §455(a) requires an assessment of the *cumulative* effects of the known facts, even if *individually* not dispositive. *Sundby v. Marquee Funding Group,* 2023 WL 4281729 at *8 (S.D. Cal. June 29, 2023) (citing *United States v. Carey,* 929 F.3d 1092, 1104 (9th Cir. 2019)). Indeed, the oft-cited Advisory Opinions expressly affirm this view, inasmuch as they are premised on the principle that a totality of circumstances may require recusal, even if they might not do so if taken individually.  *See, e.g.,* Advisory Opinion 58 ("although recusal may not be prescribed for participation by a relative who is an associate or non-equity partner, other circumstances may arise that in combination with the relative's status at the firm could raise a question about the judge's impartiality and thereby warrant recusal"); *see also* Advisory Opinion 63 ("In the event that a decision in a pending case will not substantially affect a judge's interest in an amicus, the judge still must consider whether recusal is required because 'the

judge's impartiality might reasonably be questioned'"); *see also* Advisory Opinion 67 ("A judge's determination whether to attend the seminar should be made considering the totality of the circumstances. If, in light of all the relevant factors, the judge concludes that there is a reasonable question concerning the propriety of attendance, the judge should not attend the seminar"). In sum, facts are not considered in a vacuum. Taken as a collective, and taken from the proper perspective of an ordinarily reasonable person, the facts as laid out by Cellspin are of the variety which result in a reasonable question of partiality on the part of Judge Gonzalez Rogers.

## III.   FITBIT CANNOT OVERCOME 28 USC §455(b)

Notwithstanding the foregoing, which establishes an abuse of discretion on the part of Judge Gonzalez Rogers in failing to recuse herself under §455(a), the facts of record likewise require recusal under §455(b).

### A.   The Vanguard Index Fund Is Not A Safe Harbor

In the District Court's view, which Fitbit very much applauds in its Red Brief, the status of the Vanguard Index Fund, in which Judge Gonzalez Rogers has invested upwards of $43 Million, is nothing more than a blind mutual fund. As such, according to the District Court and Fitbit, the so-called "safe harbor" discussed in Advisory Opinion 106 applies and recusal is not strictly required. *See* Red Br. at 39-40. Of course, Fitbit reads Opinion 106 such that literally *any* self-titled "mutual

fund" is fair game for a Silicon Valley Judge, notwithstanding the obvious fact that Opinion 106 is not black-and-white on this topic. Indeed, while "most" registered mutual funds nominally qualify as investment vehicles for most judges, Opinion 106 plainly contemplates a variety of exemplary scenarios in which recusal would be required.

Here, and as shown by Cellspin, the fund in question most resembles the exemplary "sector fund" discussed in Advisory Opinion 106 as requiring recusal. The facts here, which Fitbit overlooks, plainly reflect the fact that (notwithstanding its "diversified" title) the Vanguard Index Fund proudly promotes its massive, specific investments in certain leading tech companies. Of course, it is no surprise that the top 10 holdings of the Vanguard Index Fund comprise household names, as the public can readily see for itself:

| Ticker | Holdings | Shares | Market value |
|--------|----------|--------|--------------|
| AAPL | Apple Inc. | 345,657,708 | $44,911,306,000 |
| MSFT | Microsoft Corp. | 172,312,316 | $41,323,939,623 |
| AMZN | Amazon.com Inc. | 205,158,250 | $17,233,293,000 |
| BRK.B | Berkshire Hathaway Inc. Class B | 41,647,296 | $12,864,849,734 |
| GOOGL | Alphabet Inc. Class A | 138,059,335 | $12,180,975,127 |
| UNH | UnitedHealth Group Inc. | 21,597,731 | $11,450,685,022 |
| GOOG | Alphabet Inc. Class C | 122,399,733 | $10,860,528,309 |
| JNJ | Johnson & Johnson | 60,434,637 | $10,675,778,626 |
| XOM | Exxon Mobil Corp. | 95,195,592 | $10,500,073,798 |
| JPM | JPMorgan Chase & Co. | 67,801,810 | $9,092,222,721 |

*See* Appx1295.

In view of the forgoing, the notion that Judge Gonzalez Rogers' investment in Google (not to mention Apple) was anything other than known, substantial, and direct, is simply not credible. The Vanguard Index Fund is a glorified "sector fund" which holds, by its own admission, tens of millions of shares, worth billions of dollars, in Apple, Google (Alphabet), Microsoft, and Amazon. While Fitbit assigns great weight to the purported diversification of the Fund, which is technically true, it is beyond dispute that more than 25% of the Fund is invested in the Information Technology sector (*see* Appx1294), with $23 Billion of that specifically earmarked for Alphabet (Google) stock alone (*see* Appx1295). These facts are certainly known by the "well informed, thoughtful observer," and an adverse judgment of the magnitude sought by Cellspin in the underlying District Court case would have a substantial adverse impact on the value of Judge Gonzalez Rogers' holding of those stocks via the Vanguard Index Fund. In light of these facts, the substantial investment of Judge Gonzalez Rogers in the Vanguard Index Fund is squarely within the improper bounds of §455(b)(4) and/or §455(b)(5)(iii). On this basis alone, recusal was the only proper result and, even if not technically required, such facts provide the basis for a reasonable question concerning Judge Gonzalez Rogers' partiality under §455(a).

-11-

**B.    The Compass Special Situations Hedge Fund Is Not A Safe Harbor**

In Fitbit's view, the tardy revelations and admissions offered by the District Court concerning its investment in the Compass Special Situations Fund exonerate Judge Gonzalez Rogers from any repercussions of the public disclosures of her substantial (as much as $25 Million) holding in the "McKinsey & Company Special Situations Aggressive Long-Term" fund.  Assuming the proper name of the fund is the MIO Compass Special Situations Fund, the evidence of record nevertheless belies Fitbit's contention that the fund acceptably operates as a retirement mutual fund.  It plainly does not; rather, it is a hedge fund with unknown true holdings.  *See* Blue Br. at 36-38.

As shown by Cellspin in its Blue Brief, the MIO Compass Special Situations Fund has been deemed by the Securities and Exchange Commission as neither a mutual fund nor a pension fund or a 401k fund.  *See* Blue Br. at 35.  Moreover, Fitbit's argument that no component of the MIO Compass Special Situations Fund is traded in individual stocks is directly contradicted by the evidence cited by Cellspin in its Blue Brief.  More specifically, Cellspin points out that approximately ten percent of the Fund is, in fact, unregulated securities.  *See* Blue Br. at 36-38.

The result of this factual mess is simply the following:

(i)     Judge Gonzalez Rogers owns a substantial (as much as $25 Million) holding in an opaque hedge fund, of which approximately ten percent

is in the form of unknown securities;

(ii)     The public has zero idea what Judge Gonzalez Rogers actually owns;

(iii)    The hedge fund purportedly owned by Judge Gonzalez Rogers does not fall under any of the "Safe Harbor" provisions of §455(d)(4) as discussed in Advisory Opinion 106;

(iv)     Rather than properly identifying the MIO Compass Special Situations Fund in her required financial disclosures, Judge Gonzalez Rogers instead (incorrectly) identified the "McKinsey & Company Special Situations Aggressive Long-Term" fund; and

(v)      To this day, the only persons with knowledge of the securities owned by the MIO Compass Special Situations Fund are the investors themselves via performance statements and the like.

The foregoing facts give rise, in Cellspin's view, to recusal under §455(b)(4). Nevertheless, and contrary to the positions taken by Fitbit in its Red Brief, the focus of Cellspin's argument here is not on §455(b), but rather on §455(a). *See* Blue Br. at 40. Again, it is the cumulative effect of the foregoing facts which must properly be weighed. The well-informed and thoughtful objective observer, armed with the facts of record, would reasonably call into question the impartiality of Judge Gonzalez Rogers. Because "justice must satisfy the appearance of justice," recusal here was the proper and correct result.

-13-

## IV.    THE GOOGLE BUSINESS RELATIONSHIP IS DISPOSITIVE

The District Court, and now Fitbit, each refuse to appreciate the facts surrounding the unmistakable business ties between Matt Rogers (via Ajax) and Google, the parent company of Defendant Fitbit.  Under any reasonable standard, the Rogers/Google relationship satisfies the "financial interest" element of §455(b), and recusal was required on the part of Judge Gonzalez Rogers under at least §455(b)(4).  Moreover, even if there is no technical "business relationship" within the scope of §455(d)(4), the preclusive reach of §455(b)(4) is not so limited.  Of course, the same facts plainly establish a basis to reasonably question the impartiality of Judge Gonzalez Rogers, such that recusal should have alternatively been issued in accordance with §455(a).

### A.    The Ajax Relationship With Google Requires Recusal

In its Red Brief, Fitbit argues that there is no statutory "financial interest" because there is no "direct relationship" between Fitbit (or Google) and Matt Rogers.  *See* Red Br. at 27-29.  Of course, there is no denial of the fact that Google, with others, has invested a tremendous sum of money ($700 Million) specifically in the Ajax Strategies Portfolio companies.  There is likewise no denial of the facts establishing the ongoing strategic relationship among various Ajax companies and Google specifically.  *See* Blue Br. at 21-23 (summarizing evidence).  There is further no denial of the fact that Cellspin's recusal argument relies on §455(b)(4) and/or

-14-

§455(a) – not merely just §455(b)(5)(iii) alone.  *See* Blue Br. at 24 (focusing argument on the fact that Matt Rogers "has a financial interest in maintaining Google as an investor in Ajax") and *id.* at 20 (focusing argument on reasonable question of judge's impartiality).  Nevertheless, Fitbit relies almost exclusively on Advisory Opinion 107 which, by its own terms, has *nothing* to do with either §455(b)(4) or §455(a).  Indeed, Opinion 107 cautions: "This opinion does not address situations described in Canon 3C(1)(c) [*e.g.,* §455(b)(4)]."  Rather, Opinion 107 is limited to specific client and service provider scenarios.  *See* Advisory Opinion 107 ("This opinion addresses two particular forms of business relationships:  (1) client relationships … , and (2) service provider relationships").

Properly viewed, the facts here require recusal under §455(b)(4), given the following: (i) Matt Rogers obviously qualifies as the spouse of Judge Gonzalez Rogers; (ii) the Ajax-Google business relationship is longstanding and substantial (in both financial and technological terms); and (iii) an adverse judgment of the magnitude sought by Cellspin in the underlying District Court case would have a substantial affect on such business relationship.

Still further, and in the alternative, Advisory Opinion 106 itself recognizes the fact that spousal business relationships, even if outside the strict parameters of §455(b), nevertheless may force recusal whenever the totality of the circumstances allow the judge's impartiality to be reasonably questioned.  *See* Advisory Opinion

106. Such is the case here.

The tangential arguments offered by Fitbit in its Red Brief do not avoid recusal under the proper statutory sections as discussed above. In any event, Fitbit's main argument – a purported absence of any "direct business relationship" – is itself incorrect. Distilled to its core point, Fitbit characterizes the Google/Ajax relationship as merely "attenuated," an argument repeated by Fitbit throughout its Red Brief. By way of reply, Cellspin points out the obvious fact that there is nothing "attenuated" about a $700 Million investment (which stands unrebutted), nor are the multiple strategic partnerships between Google and the Ajax companies subject to whitewashing as Fitbit seeks to do. Rather, and as illustrated by Cellspin, each partnership was announced in press releases and/or blog posts by the Ajax companies themselves; this fact illustrates how *non-attenuated* the Google relationships were (and are) *from the perspective of Ajax*. It is of no moment how important the relationships might be to Google for purposes of assessing disqualification. Of course, the fact that Google is large enough to casually invest hundreds of millions of dollars and enter into multiple strategic partnerships with tech start-ups is precisely what makes the relationship so critically important to Ajax and Matt Rogers. Stated differently, the fact that Google might have a lot of money to invest in many different companies (*see* Red Br. at 30-31) has *nothing* whatsoever to do with recusal, inasmuch as §455(b)(4) is concerned with the impact on Matt

Rogers' interests – not those of Google.

## B.    The McKinsey Relationship With Google Requires Recusal

The facts of record establish a clear financial relationship between McKinsey and Google and, more specifically, between Matt Rogers and Google. The District Court, and now Fitbit, each attempt to explain away this relationship by mischaracterizing it as a mere low-level use of off-the-shelf technology. Of course, the evidence illustrates otherwise, and such a relationship requires automatic recusal under these facts.

Here, the facts are not at all analogous to that of a traditional bank/customer relationship. Rather, and as explained by Cellspin in its Blue Brief, Matt Rogers uses his position to sell Google services to his own oil and gas clients. Similarly, the facts here are plainly not limited to a situation in which Matt Rogers simply uses off-the-shelf Google email. Again, the unrebutted facts as laid out by Cellspin in its Blue Brief plainly illustrate that Matt Rogers sells Google Cloud Services for profit to his own oil and gas clients. Moreover, one aspect of his ongoing employment is founded upon such sales, and Advisory Opinion 107 does not address such a scenario. To the extent Fitbit argues that Cellspin is somehow shifting the burden on the district court judge, a plain reading of Cellspin's allegations proves otherwise. In its Recusal Motion, and again in its Blue Brief, Cellspin simply points out the known facts. To the extent Judge Gonzalez Rogers must consider the implications

of those facts, it is not because of a burden shifting maneuver on the part of Cellspin.

## V.    THE DISTRICT COURT'S JURISDICTION

The District Court discussed jurisdiction before ultimately authoring and entering its Order as an indicative ruling pursuant to FRCP 62.1. *See* Order at Appx0006. In the process, the District Court deemed itself procedurally unable to vacate the Summary Judgment Order, given the prior filing of Cellspin's Notice of Appeal to this Court (now docketed as Appeal Numbers: 22-2025, 22-2028, 22-2029, 22-2030, 22-2032, and 22-2037). Nevertheless, the District Court's Order stands as both an outright denial of recusal and an indicative ruling concerning vacatur. For its part, Fitbit now urges this Court to affirm the District Court's indicative conclusions as to its procedural inability to vacate the summary Judgment Orders. *See* Fitbit Red Br. at 20-21.

Cellspin's Motion to the District Court sought recusal under §455, which was not impacted by the status of the Summary Judgment Appeals. *See e.g. Williams v. Woodford,* 384 F.3d 567, 586 (9th Cir. 2004) (*citing Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir.1984). As such, the District Court maintained jurisdiction from which to rule on Cellspin's Motion, and this fact is uncontested. To the extent Fitbit seeks to preclude a finding of an abuse of discretion based upon the District Court's failure to vacate its erroneous Summary Judgment Orders, Cellspin has not raised that issue in this appeal. Rather, and as set forth in Cellspin's Blue Brief (*see* Statement of the

Issues at 3-4), Cellspin only appeals the District Court's failure to grant recusal. Upon reversal of the District Court's erroneous denial of recusal, Cellspin seeks remediation in the form of vacatur of the Summary Judgment Orders. *See* Blue Br. at 56-59.

## VI. CELLSPIN'S RECUSAL MOTION WAS TIMELY

The District Court, and now Fitbit, offers up the extreme theory that Cellspin somehow intentionally waited to unleash the Recusal Motion on the Court as part of an elaborate "strategy" of "gamesmanship" to escape from under Judge Gonzalez Rogers' foreseeable grant of summary judgment in favor of Defendants, and thereby gain for itself a "second bite at the apple." *See* Red Br. at 22-24; *see also* Order at Appx0008-Appx0009. Of course, such allegations are rejected by Cellspin and do not merit extended discussion. Suffice to say that there is *zero* logical strategic basis for a patentee to "sit on its hands" while a conflicted judge destroys a case it has spent the better part of six years litigating, and certainly Cellspin did not do that here.

As to the actual merits, Fitbit argues that Cellspin should have filed its Recusal Motion in 2021. *See* Fitbit Red Br. at 22. Otherwise, Fitbit argues that the six-month period following the *Centripetal* opinion and the filing of the Recusal Motion is unreasonable (again, because of Cellspin's purported "strategic decision" to delay filing). *See id.* at 23-24. For its part, Fitbit takes the position that all pertinent facts were (or should have been) known to Cellspin prior to the date of the summary

Judgment Motion; as such, Cellspin's Recusal Motion is necessarily untimely. *See id.* at 24-26.

By way of reply, Cellspin redirects the Court to Cellspin's Blue Brief, which discusses this issue in detail. *See* Blue Br. at 18-19. As a threshold matter, the District Court *did not* deny Plaintiff's Motion as untimely; rather, the District Court expressed its frustrations with the timing, declared that Cellspin's Motion "can be denied" on that basis, yet proceeded to rule on the merits. *See* Order at Appx0009 and Appx0018. As such, there is nothing for this Court to affirm in relation to purported untimeliness, and the language cited by Fitbit is mere dicta.

In any event, Cellspin did not unreasonably delay in filing its Recusal Motion. As noted in Cellspin's Blue Brief, the facts pertaining to Matt Rogers' status as an Ajax Operating Partner were not known until at least November 2022, and Fitbit makes no showing that such information was publicly available at an earlier date. Further, and as even Fitbit's own caselaw citations illustrate, there is no *per se* timeframe in which a §455 Motion must be brought; rather, reasonable filings can potentially be made up to 18 months after initial knowledge. *See United States v. Rogers,* 119 F.3d 1377, 1380-82 (9th Cir. 1997). With respect to the *Certripetal* decision, which Fitbit erroneously characterizes as irrelevant (*see* Red Br. at FN. 6), Cellspin has pointed out that the discussion concerning blind trusts in that case was pertinent to its investigation. *See* Blue Br. at 19. Of course, even if not directly on

point, the concepts relating to blind trusts was plainly analogous to the facts discovered concerning Judge Gonzalez Rogers, and the *Centripetal* opinion was cited repeatedly by Cellspin in its Recusal Motion. *See* Appx0023-Appx0024, Appx0042, and Appx0046. Only in November 2022 were the pertinent facts concerning Matt Rogers' relationship with Google, together with the news concerning Google investments in Ajax companies, known to Cellspin. Of course, Cellspin collected evidence and prepared the moving papers for filing over the holiday season for eventual submission in early January 2023. Accordingly, even if the District Court had actually denied Cellspin's Motion as untimely, this Court would be correct in reversing such a holding.

## VII. FAILURE TO VACATE IS PLAINLY NOT HARMLESS ERROR

Fitbit argues that the failure on the part of the District Court to vacate its erroneous Summary Judgment Order is a mere harmless error. *See* Fitbit Red Br. at 52. Of course, Cellspin vehemently disagrees with this suggestion, and the pertinent facts make it abundantly clear that the error was harmful to Cellspin.

First, "the risk of injustice to the parties in the particular case" weighs in favor of vacatur. As a threshold matter, Fitbit is incorrect in its assertion that everything in the Order will be reviewed *de novo* on appeal by this Court. *See* Fitbit Red Br. at 52. As argued by Cellspin in its Opening Brief in the Summary Judgment Appeal, the error on the part of Judge Gonzalez Rogers in finding that Cellspin offered "a

different infringement theory" involving "OAuth" tokens was an error amounting to an abuse of discretion. This same issue applies with respect to multiple Defendants in the underlying litigation, and to all such Defendants on appeal. *See, e.g.,* Dkt. No. 38 (Cellspin Opening Brief) in CAFC-22-2025, excerpted below:

> **5. "USER IDENTIFIER" OR "USER INFORMATION"[9]**
>
> With respect to the claimed "user identifier" and "user information" limitations, the District Court erred in finding that Cellspin offered "a different infringement theory" involving "OAuth" tokens, which it found to be a so-called "improper new theory" in violation of Local Patent Rule 3-1(c). Appx0047-49 at 17:7-19:3]. Because the District Court's error amounted to an abuse of discretion, the Order should be reversed. *Hinton v. Pacific Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).
>
> _____
> [9] This error impacts all Asserted Claims of the '794 and '752 Patents.

Of course, the existence of certain issues to be heard on an abuse of discretion standard on appeal across all cases, as opposed to *de novo,* weighs heavily in favor of vacatur. Likewise, Fitbit suffers no injustice, and fails to identify any in its Red Brief.

Second, the "risk that the denial of relief will produce injustice in other cases" also weights in favor of vacatur. For its part, Fitbit focuses on the other Defendants to the District Court action, but none of those parties is a patent plaintiff with an expiring asset (namely, the Asserted Patents) in the same manner as Cellspin. In any

event, the Summary Judgment Order relies upon essentially identical reasoning throughout, and this Court rejected Cellspin's Motion to Deconsolidate the pending appeals. *See* Dkt. No. 33 (Order Denying Motion to Deconsolidate) in CAFC-22-2025.

Third, "the risk of undermining the public's confidence in the judicial process" also requires vacatur. Plainly, the public can only be confident in rulings which are not tainted by bias, or by the question of partiality. To the extent Fitbit argues of a "chilling effect on judges and their spouses," such dire prediction is not fixed in reality. There are scarce numbers of judges (if any) with tens of millions of dollars available to invest in improper funds, and even fewer who are married to a venture capitalist having substantial business dealings with patent-infringing leading tech companies. Rarer still is the District Court Judge who meets these criteria *and* sits in Silicon Valley where these facts actually matter and these defendants are commonly hailed into Court. In any event, there is nothing wrong with "chilling" judges from investing in funds which are widely known to comprise substantial holdings in specific tech sector stocks, such as Apple and Google. If these three risk factors justify recusal, and they do, then the simple act of voluntary recusal in the first instance is all that is required to maintain the public's confidence while preserving scarce judicial resources.

## VIII. DEFENDANT NIKON IS A PROPER APPELLEE

Separately, Defendant-Appellee Nikon has filed its own Response in which it seeks to altogether avoid appellate review of the erroneous Recusal Order. *See* Nikon Red Brief [Dkt. No. 32]. Nikon's argument elevates form over substance, given the fact that the Notice of Docketing as filed in the Nikon District Court case plainly identifies *both* the Fitbit Cause Number (4:17-cv-05928) *and* the Nikon Cause Number (4:17-cv-05936) as the Originating Cases. *See* Dkt. No. 387 in 4:17-cv-05928, excerpted below:

February 22, 2023

**NOTICE OF DOCKETING**

**Federal Circuit Docket No.:** 2023-1526

**Federal Circuit Short Caption:** Cellspin Soft, Inc. v. Fitbit LLC

**Date of Docketing:** February 22, 2023

**Originating Tribunal:** United States District Court for the Northern District of California

**Originating Case No.:** 4:17-cv-05928-YGR, 4:17-CV-05936-YGR

**Appellant:** Cellspin Soft, Inc.

Of course, the above referenced Notice of Docketing appears in *both* dockets below, including as Docket No. 261 in the Nikon action (4:17-cv-05936).

The Notice of Appeal as filed by Cellspin plainly identified the subject of the instant appeal as: "[T]he order entered on February 15, 2023 (Docket No. 376) for

-24-

recusal under Section 455 and vacatur of the district court's Summary Judgment
Order (Docket No. 331/332)." *See* Dkt. No. 377 in the Fitbit action (4:17-cv-05928),
excerpted below:

> 1  Pursuant to Rules 3 and 4 of Federal Rules of Appellate Procedure and Title 28 U.S.C. §
> 2  1295(a)(1), notice is given that Plaintiff Cellspin Soft, Inc. ("Cellspin"), appeals to the United States Court
> 3  of Appeals for the Federal Circuit the following:
> 4  (1) the order entered on February 15, 2023 (Docket No. 376) for recusal under Section 455 and vacatur of
> 5  the district court's Summary Judgment Order (Docket No. 331/332).
> 6      This is a separate and secondary appeal in this case. The initial appeal pertained to the district
> 7  court's Summary Judgment Order, *et al.* filed on July 13, 2022 (Docket No. 346).
> 8      This Notice of Appeal is related to consolidated case 22-2025 currently pending before the United
> 9  States Court of Appeals for the Federal Circuit entitled *Cellspin Soft, Inc. v. Fitbit, LLC.*

The Order itself was attached to the Notice, and its heading unequivocally includes
*all* District court case numbers, and specifically including that of Nikon (4:17-cv-
05936), as excerpted below (*see* Appx0001):



Still further, *both* the originating Motion for Recusal and the Order Denying Recusal each clearly concerned *all* Defendants, and the Order was filed in the dockets of *all* cases, notwithstanding the fact that the Motion was only filed in the lead Fitbit case.  As if there were any doubt, the Motion itself expressly requested recusal "from the Google (Fitbit, Inc.) litigation, *and its related cases*."  *See* Appx0019 and Appx0022.

There is zero argument from Nikon that it was not fully aware of the fact that Cellspin was appealing the Order as to both Fitbit and Nikon, and it has suffered zero prejudice from the technical failure to file the identical Notice of Appeal in both dockets.  Because the original Motion for Recusal was filed only in the Fitbit docket to be applied across all related cases (including Nikon), and further because the District Court's Order was filed across all related cases (even though the Motion was only filed in Fitbit), the parties were all on notice of the fact that the omnibus Motion and Order were tendered as to each individual Defendant in each individual cause.

Here, of course, Nikon's awareness of the appeal and of the underlying facts is illustrated and confirmed by the following: (i) Nikon filed a timely Red Brief; (ii) Nikon has not moved to dismiss this appeal; (iii) Nikon has expressed its agreement with the arguments as set forth by Fitbit in its Response Brief.  *See* Nikon Red Br. at 1.  Nikon's argument should be rejected.

//

August 7, 2023

/s/ Randall Garteiser
Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548

**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Attorneys for Plaintiff-Appellant*
CELLSPIN SOFT, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of Federal Circuit Rule 32(b).   This Brief contains 5,825 words, excluding those portions of the brief exempted by Federal Circuit Rule 32(b)(2).   This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 14-point Times New Roman font.

*/s/ Randall Garteiser*
Randall Garteiser

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 7, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Randall Garteiser*
Randall Garteiser